**Roy HIBBERT, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

**No. 597, Docket 76–4172.**

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1977.

Decided April 4, 1977.

Milton Dan Kramer, New York City (Pollack & Kramer, New York City, of counsel), for petitioner.

Thomas H. Belote, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (Robert B. Fiske, Jr., U.S. Atty., Robert S. Groban, Jr., Sp. Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for respondent.

Before GURFEIN and MESKILL, Circuit Judges, and BARTELS, District Judge.*

MESKILL, Circuit Judge:

With some regularity, this Court notes the incredible complexity of the Immigration and Nationality Acts. Chief Judge Kaufman, for example, has aptly compared them to the labyrinth of ancient Crete. *Tim Lok v. INS,* 548 F.2d 37 (2d Cir. 1977). Frequently, we are called upon to extricate a hapless immigrant from the maze of statutory and regulatory language in which he

* Of the Eastern District of New York, sitting by designation.

finds himself enmeshed. This case, however, provides a graphic illustration of the opposite problem. It demonstrates how a resourceful litigant can exploit the procedural complexities of the immigration laws to render justice anything but "just, speedy and inexpensive." This petitioner has illegally been in the United States for nearly seven years. First ordered to leave the country in 1971, he has put off the day of reckoning time and again by astute legal maneuvers. He is now under a final order of deportation, which he has appealed to this Court pursuant to 8 U.S.C. § 1105a(a). We find no abuse of discretion in the deportation order, and accordingly, we affirm.

*Facts.*

Roy Hibbert is a native and citizen of Jamaica. In November, 1970, he illegally entered the United States by paying someone to drive him across the Canadian border into New York. Shortly thereafter, in May 1971, Hibbert "married" Mattie Martin, an American citizen. At this point, the immigration authorities were still unaware of Hibbert's presence in the United States. The following month, a visa petition was filed by Martin on his behalf. It sought an exemption from the immigration quota and labor certification requirements on the ground that Hibbert was an immediate relative of an American citizen, as defined in 8 U.S.C. § 1151(b), and thus qualified for a visa. Both Hibbert and Martin testified under oath to the *bona fides* of their marriage. In September, 1971, the District Director approved the visa petition. Accordingly, Hibbert was granted the privilege of voluntary departure until October, 1971. Had all gone according to plan, he could have then legally re-entered the country. He failed, however, to leave the United States at that time.

In June, 1973, Hibbert's wife withdrew her sponsorship of the visa petition. In its place, she gave a sworn statement denying that she and Hibbert had ever been actually married. She stated that she had been paid to enter into a sham marriage, solely to establish Hibbert's immigration status. Armed with this new information, the District Director revoked his approval of the visa petition in October, 1973, pursuant to 8 C.F.R. § 205.1(a). The same day, the INS began deportation proceedings against Hibbert.

At the hearing, Hibbert conceded his deportability, but requested the privilege of voluntary departure, which he had been afforded once before. The immigration judge who heard the case rendered his decision in March, 1974. He found that Hibbert's statements about the fraudulent marriage constituted false testimony under 8 U.S.C. § 1101(f)(6), and thus that Hibbert was ineligible for the privilege of voluntary departure because of his bad moral character. 8 U.S.C. § 1254(e). The immigration judge further stated that even in the absence of a statutory bar, he would not exercise his discretion favorably, in view of Hibbert's immigration history of illegal entry and false statements. On review, the Board of Immigration Appeals held, in November, 1974, that the immigration judge was correct in refusing to grant voluntary departure in view of Hibbert's immigration history, whether or not he was eligible under the statute.

Hibbert appealed to this Court in February, 1975, and thus was granted an automatic stay of deportation. 8 U.S.C. § 1105a(a)(3). In April, 1976, Hibbert withdrew this appeal with prejudice.[1] Meanwhile, in March, he had petitioned the

---

1. The government characterizes that proceeding as a dilatory tactic. The record strongly suggests that this is correct, and that Hibbert never intended to perfect that appeal. We wish to caution the Bar against abusing the process of this Court solely to gain delays in deportation. Such conduct is a serious violation of professional ethics; moreover, it can only create additional equities against the alien. *See In re Bithoney,* 486 F.2d 319 (1st Cir. 1973).

There is an additional danger in such appeals. Hibbert could have attacked the deportation order at that time. By invoking the power of the Court, and then withdrawing the appeal with prejudice, he precluded himself from raising any issue which could have been

Board of Immigration Appeals to reopen the deportation proceedings pursuant to 8 C.F.R. §§ 3.2, 3.8. The grounds alleged for relief were that Hibbert was now married to a resident alien about to become a citizen; he also stated that his new wife was pregnant. The Board, exercising its administrative discretion, denied this petition in May, 1975.

Undaunted, Hibbert then filed a motion to reconsider the Board's refusal to reopen the deportation proceedings, seven days after the withdrawal of his first appeal. Again, he claimed that there was new evidence meriting reconsideration of his case. The grounds alleged were that Hibbert's wife was now a citizen and he was the father of a citizen child. He further claimed that his bad moral character was no longer a bar to relief because the five-year period set out in 8 U.S.C. § 1254(e) would expire on August 4, 1976, and thus he was now eligible for voluntary departure. This motion, too, was denied, in June, 1976. In July, just before Hibbert was to report for deportation, he appealed to this Court for the second time.

*Discussion.*

■ Hibbert carries a double burden in this case. First, he must establish that he meets the statutory requirements for the discretionary privilege of voluntary departure. Next, he must demonstrate that the Board failed to exercise its discretion, and that there was some likelihood that a remand to the Board of Immigration Appeals would result in a favorable decision.

The privilege of voluntary departure is granted by 8 U.S.C. § 1254(e), which provides:

The Attorney General may, in his discretion, permit any alien under deportation proceedings, other than an alien within the provisions of paragraphs (4),

(5), (6), (7), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of this title (and also any alien within the purview of such paragraphs if he is also within the provisions of paragraph (2) of subsection (a) of this section), to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection.

"Good moral character" is itself defined in 8 U.S.C. § 1101(f). The specific provision applicable here is subsection (6), which provides:

For the purposes of this chapter—

No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—

.    .    .    .    .

(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter  .   .   .  .

The immigration judge concluded that Hibbert's false testimony that he was married to Mattie Martin rendered him ineligible under these provisions. Hibbert's response is that the false testimony took place more than five years ago, and thus that he meets statutory requirements.

■ As the immigration judge found, Hibbert failed to meet the requirements of § 1254(e). The five-year period is not a statute of limitations; it is merely a threshold requirement for relief. *Rassano v. INS,* 492 F.2d 220, 225 (7th Cir. 1974) (10 year period of 8 U.S.C. § 1254(a)(2)).[2]

Deportation is a drastic sanction, and we have repeatedly construed the immigration

the subject of that appeal. Thus, the deportation order is now *res judicata,* and petitioner may appeal only from the refusal to reopen.

**2.** Petitioner has misconceived the import of the five-year period. It is necessary but not sufficient for a finding of good moral character. 8 U.S.C. § 1254(e) requires such proof for "at

least" five years. Thus, petitioner's argument that the INS *must* find him to be eligible for the exercise of discretion is without foundation. *See also* 8 U.S.C. § 1101(f) (final clause). Moreover, the burden of proof is not upon the INS, but upon the petitioner. *Trias-Hernandez v. INS,* 528 F.2d 366, 370 (9th Cir. 1975).

laws to avoid harsh results. *See Lennon v. INS,* 527 F.2d 187, 193 (2d Cir. 1975). At the same time, there is no reason to strain for hypertechnical readings of these involved statutes in order to grant relief to those never intended for the law's benefits. *See Heitland v. INS,* 551 F.2d 495, 503–504 (2d Cir. 1977). This is such a case.

■ Hibbert has remained in the United States as long as he has only because of his repeated flouting of lawful orders and frivolous, but well timed, applications for relief. One who fits within the statutory definition of bad moral character does not transform himself into a paragon of virtue by five years of artful dodging.[3] We will not allow the immigration laws to be manipulated in this way, using the courts to create the equities they are meant to discover. *Acevedo v. INS,* 538 F.2d 918 (2d Cir. 1976).

On the final application to the Board to reconsider its decision not to reopen, there was no new evidence. Mrs. Hibbert's citizenship and the birth of Hibbert's child were the natural consequences of her earlier virtual completion of the naturalization process and her pregnancy, all of which was known to the Board at the time of the first motion to reopen.

Marriage to a citizen and the birth of a citizen child is a factor of significance to the INS, even if these events take place after deportation proceedings have begun. *See Matter of T—,* 5 I&N Dec. 736 (B.I.A. 1954). Hibbert argues that these factors conceivably support a favorable exercise of discretion by the Board of Immigration Appeals, and thus the case should be remanded for a formal determination of his eligibility. This contention is without merit.

■ In reviewing a refusal to reopen a deportation proceeding, we are limited to the administrative record and can reverse only for abuse of discretion. *Schieber v. INS,* 461 F.2d 1078, 1079 (2d Cir. 1972). Hibbert's unfortunate immigration history amply supports the discretionary refusal to waive deportation. As we noted above, it is clear that the Board possessed all the favorable, as well as unfavorable, facts in Hibbert's case.[4] However, he argues that the Board failed to reach the question of eligibility under 8 U.S.C. §§ 1101(f), 1254(e), as he claims it was required to do.

It is clear from numerous, unequivocal statements by the immigration judge and the Board that they would not grant Hibbert the discretionary privilege of voluntary departure. In view of this, there is no reason to remand the case to the Board for a pointless determination of his technical eligibility, since the end result will be deportation.

The Supreme Court recently dealt with a closely analogous situation in *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976). In a *per curiam* opinion, the Court held that the INS may pretermit threshold questions of eligibility if the result is foregone:

> The District Director of the Immigration and Naturalization Service (INS) denied respondent's application as a matter of discretion because she had made serious misrepresentations to the United States Consul who had issued her visa. For the same reasons, the immigration judge presiding at a later deportation hearing also declined to exercise his discretion in her favor. Neither the District Director nor the immigration judge addressed himself to whether respondent satisfied the specific statutory requirements for permanent residence. The Board of Immigra-

---

3. *See Schieber v. INS,* 171 U.S.App.D.C. 312, 520 F.2d 44 (1975), which involved five petitions for review in this Circuit, one in the Ninth, and one in the District of Columbia, as well as numerous administrative proceedings, resulting in a stay of over 14 years after an order of deportation.

4. This distinguishes the instant case from *Yee Dai Shek v. INS,* 541 F.2d 1067 (4th Cir. 1976), heavily relied upon by petitioner. In that case, the Fourth Circuit held that it was unclear that the petitioner's marriage and citizen child had been brought to the Board's attention. *Id.* at 1070. Moreover, *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976), casts serious doubt on the continued validity of the holding of *Yee Dai Shek*; in fact, Judge Bryan's dissent in that case anticipated the position later adopted by the Supreme Court.

tion Appeals affirmed, finding that the circumstances fully supported the discretionary denial of relief and concluding that "the immigration judge could properly pretermit the question of statutory eligibility and deny the application . . as an exercise of discretion."

A divided Court of Appeals sitting en banc held that although the immigration judge had properly exercised his discretion to deny respondent's application, the statute required the judge to make findings and reach conclusions with respect to respondent's eligibility for admission into this country as a permanent resident. Disagreeing as we do with the Court of Appeals, we grant the petition for certiorari filed by the INS and the motion by respondents to proceed in forma pauperis and reverse the judgment of the Court of Appeals.

As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach. Here it is conceded that respondent's application would have been properly denied whether or not she satisfied the statutory eligibility requirements. In these circumstances, absent express statutory requirement, we see no reason to depart from the general rule and require the immigration judge to arrive at purely advisory findings and conclusions as to statutory eligibility.

*Id.* at 24–26, 97 S.Ct. at 200–201. (Citations omitted). This case is indistinguishable on this issue from *Bagamasbad.* Regardless of whether the deportation order rested upon a finding of statutory ineligibility or an unfavorable exercise of discretion, it is amply supported by the record, and no contrary result could be expected upon a remand.

The order of the Board of Immigration Appeals is affirmed.