Revised March 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 00-30467

BALDWIN NEIL FOSTER

Plaintiff-Appellant,

v.

KAREN TOWNSLEY; HENRY, Officer, Officer at Avoyelles Parish Jail;
JOHN DOES, 5 Unknown Immigration and Naturalization Officers at
Oakdale Immigration and Naturalization Office; DISTRICT DIRECTOR
OF IMMIGRATION AND NATURALIZATION SERVICE, 28th District of
Louisiana; LYNNE M. UNDERDOWN; EDDIE BASHAM; HENRY LAVALAIS;
NANCY HOOKS; BASH, Deportation Officer

Defendants-Appellees.

Appeal from the United States District Court for the
Western District of Louisiana

March 8, 2001

Before REYNALDO G. GARZA, DAVIS and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Baldwin Foster ("Foster"), a Jamaican native who sued Immigration and Naturalization Service ("INS") officials for wrongfully removing him from the country, appeals the district court's dismissal for lack of jurisdiction pursuant to 8 U.S.C. § 1252(g). Finding that 8 U.S.C. § 1252(g) precludes judicial review of Foster's claims, we affirm.

**BACKGROUND**

This case arises out of the INS's deportation of Foster while his case was pending in the Board of Immigration Appeals (BIA). In November 1996, Foster was issued an order to show cause why he should not be deported after his conviction for an aggravated felony. Foster posted bond and was released from custody in March of 1997. The next month, his attorney, appearing telephonically for a scheduled hearing before the Immigration Judge, requested a continuance for the purpose of filing a motion to change venue. Although the Immigration Judge granted the motion and continued the proceedings, no motion for a change of venue was filed. In June of 1997, neither Foster nor his attorney appeared in New York for a scheduled hearing. Consequently, after determining that proper notice was provided and that deportability had been established, the Immigration Judge ordered that Foster, in absentia, be deported. In September 1997, through new counsel, Foster filed a motion to reopen the proceedings. The Immigration Judge denied his motion in November 1997. Foster appealed this decision to the BIA in December of 1997. In July of 1998, Foster submitted a motion to remand for the consideration of new evidence.

That November, Foster filed a petition for a writ of mandamus in federal court to compel the BIA to rule on his appeal.

The magistrate judge, in December of 1998, recommended that the petition be denied.

Foster was deported to Jamaica in December of 1998, while his appeal with the BIA was still pending. In February 1999, the BIA sustained Foster's appeal and ordered that proceedings be reopened and the record remanded to the Immigration Judge. BIA found that the Immigration Judge had erred in denying Foster's motion to reopen the in absentia deportation order because there was a lack of evidence that written notice was sent to Foster's attorney via certified mail, as required by statute. The next month, Foster sought to re-enter the United States pending a decision on his appeal to the BIA. He was returned to the United States in May 1999.

Upon his return, Foster filed a complaint seeking monetary damages in the amount of five million dollars and declaratory relief for alleged constitutional deprivations pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). At that time, he was confined in the Avoyelles Parish Jail as a detainee of the INS. The named defendants were Karen Townsley, Deportation Officer; Officer Henry Lavalais, prison officer at the jail; Lynne Underdown, district director of the INS; Nancy Hooks, immigration officer; Eddie Basham, immigration officer; and five unknown officers. In his

3

original and amended complaints, Foster alleged that he was improperly removed from the country, that Townsley was in charge of Foster's case, and that she, along with the district director, ordered that Foster be removed to Jamaica even though his motion to reopen was pending before the BIA and there was a stay of deportation order in effect. Foster also alleged that Basham and Hooks conspired with Townsley and others to remove Foster from the country without due process and in contravention of the stay of removal order in effect at the time; that his removal was in retaliation for his filing of a mandamus action against the BIA; that five immigration officers used excessive force when removing him and refused to allow him to talk to an attorney; and that Lavalais, while Foster was being removed and fingerprinted, held Foster's neck and pinned his head to the floor while other officers put their knees in Foster's stomach.

Townsley filed a motion to dismiss, arguing *inter alia* that the district court lacked jurisdiction under 8 U.S.C. § 1252(g) to review any claims challenging the INS officers' decision to order Foster removed. Basham filed a similar motion to dismiss.

After painstaking efforts by both the magistrate judge and district court, the district court adopted the magistrate

4

judge's recommendation to dismiss Hooks and Lavalais,[1] and as to Townsley, Underdown and Basham, concluded that it lacked jurisdiction under § 1252(g) and this court's decision in Humphries v. Various Federal USINS Employees, 164 F.3d 936, 942 (5th Cir. 1999). The court reasoned that although Foster had not asserted a direct or habeas challenge to his removal, his challenge had to be authorized by 8 U.S.C. § 1252(a)-(f). The court stated that nothing in those sections contemplated an alien's challenging his removal via civil rights actions against INS officials. In addition, the court held that because Foster's claims against Townsley, Underdown and Basham "arise under" the INS's decision to execute a removal order deporting Foster to Jamaica, § 1252(g) applies to those claims and precludes judicial review. Therefore, the district court dismissed the claims against Townsley, Underdown and Basham without prejudice for lack of jurisdiction.

Foster has appealed and been granted IFP status.

## DISCUSSION

On appeal, Foster argues that the district court has jurisdiction to review his claims. The violation of a non-discretionary stay order, he argues, is distinct from the discretionary decision to execute a removal order. His alleged

---

[1] The district court found that Hooks was not involved in Foster's case and that Lavalais did not use excessive force. Foster, having failed to brief his disagreement with these decisions on appeal, waived it.

5

liberty interest in not being removed for five months in violation of a stay order, therefore, is not specifically precluded by the statute. The defendants respond that, under <u>Humphries</u> and § 1252(g), this court lacks jurisdiction to review issues surrounding Foster's removal.[2]

Thus, the issue that we must resolve is whether 8 U.S.C. § 1252(g) precludes judicial review only of discretionary actions taken by the Attorney General, or whether it also covers decisions that may be non-discretionary. This court reviews the district court's legal conclusions on jurisdiction de novo. <u>Requena-Rodriquez v. Pasquarell</u>, 190 F.3d 299, 302 (5th Cir. 1999).

In the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Congress instituted a new and more restrictive judicial review scheme over immigration decisions. 8 U.S.C. § 1252. After the enactment of IIRIRA, two sets of rules, transitional and permanent, govern immigration proceedings. The transitional rules apply to removal proceedings that commence before April 1, 1997, and conclude more than thirty days after

---

[2]    We note that <u>Humphries</u> does not control the outcome of this case because its interpretation of the IIRIRA preceded the Supreme Court's narrow construction of the statute in <u>Reno v. American-Arba Anti-Discrimination Committee</u>, 525 U.S. 471, 119 S.Ct. 936, 142 L.E.2d 940 (1999) ("AADC"). In <u>Humphries</u>, this court reviewed the jurisdictional question under all of the provisions of 8 U.S.C. § 1252, permanent and transitional, rather than just § 1252(g) although it appears that the IIRIRA would not apply to his case at all because the entry of Humphries' final order of exclusion occurred before September 30, 1996. <u>Humphries</u>, 164 F.3d at 940. However, as discussed below, <u>AADC</u> does not change this court's interpretation in <u>Humphries</u> of "arising from" in § 1252(g).

6

September 30, 1996.  <u>Santos v. Reno</u>,   228 F.3d 591, 595 (5th Cir. 2000).  Because Foster's proceedings began in 1996 with the order to show cause and concluded more than thirty days after September 30, 1996, the transitional rules govern.  <u>Wallace v. Reno</u>, 194 F.3d 279, 287 (1st Cir. 1999)("[W]e, think that when an order to show cause is served on the alien, the deportation process has effectively begun and expectations properly form, even if there is no actual reliance.").

The Supreme Court discussed the scope of the transitional rules in <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 119 S.Ct. 936 (1999)("AADC").  The Court held that judicial review of transitional cases is governed only by § 1252(g).  This provision states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  The Court stated that this clause does not preclude judicial review in all transitional cases involving deportation.  Rather, it held that the "provision applies *only* to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'"  <u>AADC</u>, 525 U.S. at 482, 119 S.Ct. at 943

7

(emphasis added). This provision stands in contrast to § 1252(b)(9), the provision governing permanent cases, which acts as a "zipper clause" by channeling judicial review of all decisions and actions. The Court stated that § 1252(g) "performs the function of categorically excluding from non-final-order judicial review . . . certain specific decisions and actions of the INS." *Id.* at 483, 119 S.Ct. at 943, and it applied a "narrow reading" of the provision.

Foster's challenge concerns the INS officer's decision to execute his deportation despite non-discretionary regulations requiring that his deportation be stayed. 8 C.F.R. § 3.6 provides that, while an appeal is pending before the BIA, in cases where the deportation order was entered in absentia pursuant to the provisions of 8 C.F.R. § 3.23(b)(4)(iii), an automatic stay of the deportation applies. 8 C.F.R. §§ 3.6(b).[3]

Foster asserts that <u>AADC</u>'s interpretation of the statute requires that judicial review be precluded only when the Attorney General makes discretionary decisions. We disagree. Although the

---

[3] 8 C.F.R. § 3.23(b)(4)(iii) applies to orders entered in absentia in deportation or exclusion proceedings. The regulation states that "orders entered in absentia may be rescinded only upon a motion to reopen filed" either when the alien demonstrates that the failure to appear was because of exceptional circumstances beyond his control or in situations where the alien demonstrates that he did not receive notice or that he was in federal or state custody and the failure to appear was not his own. § 3.23(b)(4)(iii)(A)(1),(2). The filing of such a motion "shall stay the deportation of the alien pending decision on the motion and the adjudication of any properly filed administrative appeal." § 3.23(b)(4)(iii)(C). The regulation makes this a mandatory, non-discretionary stay of deportation.

8

Court emphasized the importance of preserving the Attorney General's discretionary functions in the three enumerated categories, it did not explicitly state that the provision applies *only* to review of discretionary decisions by the Attorney General in these areas and not to review of non-discretionary decisions. The Court further stated that "[i]t is entirely understandable . . . why Congress would want only the discretion-protecting provision of § 1252(g) applied even to pending cases: because that provision is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id*. at 486, 119 S.Ct. at 945. The Court contrasted the three actions where Congress precluded review in transitional cases to those which Congress chose to also limit in permanent cases. The Court does not, however, state that the provision exclusively governs review of *discretionary* actions.[4] Indeed, there is no discussion of review over non-discretionary actions. The provision itself does not distinguish between discretionary and non-discretionary decisions.

---

[4]    We note that cases following AADC focus on the Attorney General's discretionary decisions. *See e.g.* Zadvydas v. Underdown, 185 F.3d 279, 285 (5th Cir. 1999)("In [AADC], the Court held that the enactment was not a general bar, but rather limited judicial review of a narrow class of discretionary executive actions."); Alvidres-Reyes v. Reno, 180 F.3d 199, 205 (5th Cir. 1999)("[J]udicial intervention in cases in which the Attorney General has exercised her discretion not to commence proceedings or adjudicate cases would interfere with her discretionary determinations and lead to the deconstruction, fragmentation, and hence prolongation of removal proceedings at which the Supreme Court concluded that § 1252(g) directed."). However, this court has not previously had occasion to review whether the provision applies to non-discretionary decisions.

9

Rather, the statute refers to "any cause or claim" that "aris[es] from the decision or action by the Attorney General" in the three areas. 8 U.S.C. § 1252(g). Therefore, while it may be true that the officials executed the order despite the regulation's requirement of an automatic stay of his deportation, this distinction is not critical because a plain reading of the statute demonstrates that Congress did not exclude non-discretionary decisions from this provision limiting judicial review.

The final question is whether Foster's claims "arise from" the actions which § 1252(g) precludes from judicial review. "[C]laims that clearly are included within the definition of 'arising from' . . . [are] those claims connected directly and immediately with a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." Humphries, 164 F.3d at 943. In Humphries, for example, we held that the court had no jurisdiction under § 1252(g) to review the plaintiff's claim that INS agents conspired to exclude him in retaliation for the exercise of his First Amendment rights. The particular acts that form the basis of Foster's lawsuit arise from the officials' decision to execute his removal order. His claims of excessive force, denial of due process, denial of equal protection and retaliation are all directly connected to the execution of the deportation order. Therefore, their acts fall

10

within the ambit of section 1252(g) and are precluded from judicial review. The district court correctly concluded that it lacked jurisdiction to review Foster's claims.[5]

## CONCLUSION

For the foregoing reasons, the district court's judgment dismissing the claims against Townsley, Basham, and Underwood for lack of jurisdiction is **AFFIRMED**.

---

[5] Foster also seeks permission from this court to proceed against the five immigration officers. He sought to have the officers served after the district court dismissed the claims against the other parties, indicating that he recently learned the names of the officers through discovery responses from Townsley. We lack jurisdiction to review this claim because Foster did not file a notice of appeal regarding this issue. *See* Barber v. Security Benefit Life Ins. Co., 936 F.2d 210, 211 (5th Cir. 1991); Fed. R. App. P. 4(a) .