**UNITED STATES of America,
Plaintiff,**

**v.**

**Basilio HERNANDEZ–RODRIGUEZ,
Defendant.**

**No. CR 3:01–CR–264–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Nov. 2, 2001.

Dayle Elieson, Ass't U.S. Atty, Dallas, TX, for plaintiff.

Michael P. Gibson of Burleson, Pate & Gibson, L.L.P., Dallas, TX, for defendant.

FITZWATER, District Judge.

Defendant moves to dismiss an indictment charging him with illegal reentry after deportation subsequent to a conviction for commission of an aggravated felony. The court must decide whether the application to his 1994 sexual assault conviction of amendments made in 1996 to the Immigration and Nationality Act ("INA") by the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") and the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), which retroactive application the Supreme Court later declared improper in *I.N.S. v. St. Cyr*, —— U.S. ——, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), rendered his 1999 deportation proceeding fundamentally unfair, thus subjecting his deportation order to collateral attack and invalidating the indictment for illegal reentry. Because the court holds that the deportation proceeding was not fundamentally unfair and that it cannot be collaterally attacked on any other basis, it denies the motion to dismiss.

I

Hernandez was admitted to the United States as a lawful and permanent resident

in 1990. In 1994 he was convicted in Dallas County, Texas of sexual assault, for which he received two years deferred adjudication. Although he successfully completed his period of probation, the offense qualified Hernandez as an aggravated felon for immigration law purposes.

Agents of the Immigration and Naturalization Service ("INS") arrested Hernandez in 1998 and placed him in administrative removal proceedings pursuant to § 237(a)(2)(A)(iii) of the INA, as amended in 1996 by IIRIRA and AEDPA. Under the amended INA, an aggravated felon such as Hernandez is subject to removal from the United States based on his felony conviction and may not apply for a § 212(c) or § 212(h) waiver of deportability by the Attorney General of the United States. Hernandez appeared at his first hearing before Immigration Judge D. Anthony Rogers ("Judge Rogers") in February 1999, during which he challenged the validity of his prior sexual offense conviction. Judge Rogers reset the hearing so that Hernandez could petition the state court for relief, which the state court did not grant. Following a second hearing, over Hernandez's objection to retroactive application of the INA amendments to his case, Judge Rogers ordered him deported, and Hernandez was deported on March 16, 1999.

In July 2001 Hernandez entered the United States from Mexico without having obtained the consent of the Attorney General to reapply for admission. INS agents arrested Hernandez, and he was later indicted for the offense of illegal reentry after deportation subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

Hernandez moves to dismiss the indictment, contending the government cannot use the 1999 deportation to prove one of the requisite elements of the offense of illegal reentry, because the order removing him was based on an improper retroactive application of IIRIRA and AEDPA to amend the INA to apply to his 1994 sexual assault conviction. The government argues that Hernandez has failed to establish the elements necessary to collaterally attack the deportation order.

## II

■ The essential elements the government must establish beyond a reasonable doubt to prove Hernandez guilty of violating 8 U.S.C. § 1326 are that (1) he was an alien at the time alleged in the indictment, (2) he had previously been deported from the United States, (3) thereafter, he was found in the United States, and (4) he had not received the consent of the Attorney General to apply for readmission to the United States since the time of his previous deportation. *See* 8 U.S.C. § 1326. Hernandez moves for dismissal on the ground that because his deportation order was improper, it cannot be used to satisfy the second element of the government's case.

■ To attack the deportation order collaterally, Hernandez must first exhaust any administrative remedies that may have been available to seek relief against the order. *See* 8 U.S.C. § 1326(d)(1). He must then satisfy each element of a three-part test. First, he must establish that his deportation hearing was "fundamentally unfair." *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir.2000) (on rehearing). Second, he must show that the hearing effectively eliminated his right to challenge the hearing by means of judicial review of the order. *Id.* Third, he must demonstrate that the procedural deficiencies caused him actual prejudice. *Id.* If Hernandez fails to establish any of these elements, the court need not consider the

others in denying his motion to dismiss the indictment. *See id.* at 485 (citing *United States v. Encarnacion–Galvez,* 964 F.2d 402, 406 (5th Cir.1992)).[1]

## III

### A

The court first considers whether Hernandez exhausted all available administrative remedies before attempting to make this collateral attack on his deportation order in a criminal proceeding. The government argues that he should have filed a motion to reopen his deportation case with the Board of Immigration Appeals ("BIA") and then sought judicial review of any adverse decision. It posits that his failure to do so means he cannot satisfy the first element of a permissible collateral attack. Hernandez does not address the administrative remedies element in his brief.

In *Goonsuwan v. Ashcroft,* 252 F.3d 383 (5th Cir.2001), the Fifth Circuit addressed the issue of exhaustion of administrative remedies. Although the legal context in *Goonsuwan* involved a challenge to the habeas corpus jurisdiction of the district court in a deportation action based on the alien's alleged failure to exhaust all available remedies, the panel's reasoning applies equally in the present case in the collateral attack context. The Fifth Circuit held that the relevant question is "whether [the alien] presented to the BIA the issue … raised in his habeas petition, thus exhausting his administrative remedies *as to that issue.*" *Id.* at 388 (emphasis in original). If he did not, then collateral attack of the order is improper.

█ In the present case, Hernandez did not appeal to the BIA, and he therefore failed to present his claim that the 1996 INA amendments were improperly applied to his case. There is an exception, however, to the general rule of exhaustion of administrative remedies. "[W]here resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor," *Sousa v. I.N.S.,* 226 F.3d 28, 32 (1st Cir. 2000), an alien such as Hernandez is not required to exhaust all remedies, *see Goonsuwan,* 252 F.3d at 389 (quoting *Sousa* ). In this case, the BIA could not have ruled in Hernandez's favor on his argument of improper retroactivity because the current law was to the contrary. It was not until the Supreme Court's decision in *St. Cyr* that retroactive application of the 1996 amendments to the INA in cases like Hernandez's was prohibited. Because the BIA had no power to alter the law in 1999, Hernandez's case falls under the exception to the exhaustion of administrative remedies requirement, and he therefore meets this requirement for a permissible collateral attack.

### B

The court next addresses whether Hernandez's deportation hearing was fundamentally unfair. Hernandez bases his allegation of fundamental unfairness on the retroactive application of the 1996 INA amendments to his case, an application held improper in *St. Cyr.* His allegation is substantive rather than procedural because he does not assert that he was prevented from making the argument at his deportation hearing.

The government correctly argues that Hernandez is improperly attempting to turn the fundamental fairness inquiry, which is procedural in nature, into an ex-

---

1. Because the government does not dispute Hernandez's argument that the alleged procedural deficiencies at his deportation hearing caused him actual prejudice, the court assumes he has satisfied the third element of the test.

panded, substantive inquiry. The Supreme Court and the Fifth Circuit have held that fundamental fairness is solely an issue of procedural due process. *See Lopez–Vasquez*, 227 F.3d at 484 (citing *United States v. Mendoza–Lopez*, 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)). In fact, in *Mendoza–Lopez*, in which it first articulated the fundamental fairness inquiry, the Supreme Court discussed the types of due process errors that rise to the level of fundamentally unfair violations justifying collateral attacks on deportation orders. *See Mendoza–Lopez*, 481 U.S. at 839 n. 17, 107 S.Ct. 2148. Although this discussion is not meant to be exclusive as to specific actions that violate due process, *id.*, the enumerated fundamental errors are all procedural in that they "may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." *Id.* In *Mendoza–Lopez* the immigration judge had been fundamentally unfair in accepting unconsidered waivers of appeal and failing to advise the aliens properly of their eligibility to apply for suspension of deportation. *Id.* at 840, 107 S.Ct. 2148.

"The Supreme Court has made it clear that due process requires only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *United States v. Benitez–Villafuerte*, 186 F.3d 651, 657 (5th Cir.1999) (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953)). "The role of the judiciary is limited to determining whether the procedures meet the essential standard of fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Landon v. Plasencia*, 459 U.S. 21, 34–35, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

■ The retroactive application of the 1996 INA amendments to Hernandez's case does not rise to the level of a due process violation and therefore did not render the deportation hearing fundamentally unfair. Hernandez received notice of the intent to remove him to Mexico and a hearing before an immigration judge. He was able to present all relevant arguments at that hearing, including his contention that the 1996 amendments were improper in their retroactive application. Hernandez was not, as he alleges, denied a hearing on §§ 212(c) and (h) waivers. Rather, he was allowed to argue that he was eligible for such waiver, and Judge Rogers ultimately ruled that, under the 1996 INA amendments, he was not. *See* DX 6 at 7. Hernandez's sole allegation of fundamental unfairness is thus based on the fact that at a *later* date the Supreme Court agreed with this argument when advanced by another alien in another case. This establishes, however, only that Hernandez's argument was substantively correct; it does not prove that, in considering and deciding it, Judge Rogers committed any *procedural* errors rising to the level of due process violations and thus fundamental unfairness. The court declines to hold that, because Judge Rogers applied law that ultimately was deemed incorrect, the deportation proceeding was fundamentally unfair.[2]

2. Even if the court were to conduct the substantive inquiry that Hernandez seeks on the merits of his collateral attack, he would not be entitled to relief. The government correctly contends that the new principle of law articulated in *St. Cyr*, which held the 1996 INA amendments' retroactive effect to be improper, does not apply to cases disposed of earlier. "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all

### C

 In view of the court's holding above, it is unnecessary to consider any other *Lopez–Vasquez* factor. *See Lopez–Vasquez,* 227 F.3d at 485. The court will nevertheless address whether Hernandez's deportation hearing effectively eliminated his right to challenge the results of the hearing by means of judicial review.

In *Mendoza–Lopez* the Supreme Court held that a hearing deprives an alien of judicial review when the immigration judge permits waiver of the right to appeal that is not the result of considered judgment by the alien, or when he fails to advise the alien properly of his eligibility to apply for suspension of deportation. *Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148. Hernandez argues that because Judge Rogers advised him that he seemed to have no basis for a successful appeal in his case, the decision to waive his right to appeal was not based on considered judgment.

Judge Rogers' opinion on the likely success of any appeal is distinct from any actual or constructive denial on his part of the *right* to appeal. Hernandez does not allege that there was any denial of that right, and the record shows that Judge Rogers did advise Hernandez of that right. *See* DX 6 at 4. After initially reserving appeal and then conferring with his lawyer, Hernandez ultimately decided not to appeal. *Id.* at 7–8. There is therefore no evidence that Hernandez's decision to waive his right to appeal was not based on considered judgment. Hernandez could have challenged Judge Rogers' view that an appeal would be unsuccessful. He could have made a good faith argument for

cases still open on direct review [.]" *Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Hernandez's case was no longer open on direct review when the Supreme Court decided *St.*

changing extant immigration law that required retroactive application of the 1996 INA amendments to his case. But he did not do so, he was not denied the opportunity for meaningful judicial review of his deportation order, and he therefore may not now collaterally attack the order.

\* \* \* \* \* \*

Hernandez's September 17, 2001 motion to dismiss the indictment is denied.

**SO ORDERED.**

*Cyr.* He therefore may not in effect reopen his prior civil case through a collateral attack on his deportation order in this criminal proceeding.