Steven DIGRADO, Petitioner,

v.

John ASHCROFT, Attorney General; and United States Immigration and Naturalization Service, Respondents.

No. 9:01–CV–1359.

United States District Court, N.D. New York.

Feb. 8, 2002.

Kathryn M. Kase, Albany, NY, for Petitioner.

Hon. Joseph A. Pavone, United States Attorney for the Northern District of New York, NY (Sara M. Lord, of Counsel) for defendant James T. Foley.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. Background

Petitioner Steven DiGrado ("petitioner" or "DiGrado") is a native and citizen of Italy who, at the age of seven, entered the United States as an immigrant with his parents in 1966. (*See* Pet. at ¶ 1.) DiGrado, who never applied for citizenship in

this country, subsequently married and had two children. *Id.* at ¶¶ 1–2.

On June 23, 1993, DiGrado was arrested and thereafter charged with possessing with intent to distribute more than 500 grams of heroin. *Id.* at Ex. A. DiGrado pleaded guilty to this charge and was sentenced by the Hon. Maryanne Trump Barry, U.S. District Judge for the District of New Jersey, to a term of imprisonment of sixty months. *Id.* at Ex. C.

On February 26, 1998, the Immigration and Naturalization Service ("INS") issued a Notice to Appear that charged DiGrado with removability on the ground that the possession with intent to distribute heroin conviction constituted an aggravated felony which subjected DiGrado to deportation. (Resp't Mem. Supp. Dismiss at Ex. A.) On May 4, 1998, DiGrado, after having served his sentence on the drug conviction, was released from the custody of the Bureau of Prisons pending resolution of the issues relating to his deportability. (Pet. at ¶ 7.)

In November 1998, Immigration Judge Daniel A. Meisner ("Immigration Judge Meisner") held a hearing on the issue of whether DiGrado was to be deported. At this hearing, Immigration Judge Meisner found that DiGrado was not entitled to seek discretionary relief from deportation under former Section 212(c) of the Immigration and Nationality Act ("INA"), and in his decision issued on November 12, 1998, ordered the removal of DiGrado from the United States. (Resp't Mem. Supp. Dismiss at Ex. B.) DiGrado appealed to the Board of Immigration Appeals ("BIA"). In its decision dated May 21, 1999, the BIA acknowledged that DiGrado had been a lengthy resident of the United

States and was a parent of two children who are United States citizens. However, it found that Immigration Judge Meisner properly found that DiGrado did not qualify for any form of relief from removal, and the BIA therefore dismissed DiGrado's appeal. (Pet. at Ex. E.) DiGrado did not seek any review of the BIA's decision from the Third Circuit Court of Appeals [1] as is authorized under 8 U.S.C. § 1252. Additionally, DiGrado did not file a petition for a writ of habeas corpus following dismissal of his BIA appeal.

DiGrado was deported to Italy in September 1999. At the time of his removal, he was provided a notice that informed him that he was prohibited from entering or attempting to enter this country at any time due to his being convicted of an aggravated felony. This notice also advised DiGrado that once he was removed, he was required to obtain permission from the Attorney General authorizing any travel he wished to make to the United States. (Resp't Mem. Supp. Dismiss at Ex. D.)

On May 1, 2001, DiGrado attempted to enter the United States as a passenger in an automobile being driven by his girlfriend. *Id.* at Ex. E. Border agents detained DiGrado after he presented an expired green card in support of his claim that he was entitled to enter the United States. *Id.* DiGrado was subsequently arrested and charged with illegally attempting to re-enter the country after his removal. *Id.; see* 8 U.S.C. § 1326.

DiGrado filed the present petition on August 30, 2001. Petitioner claims that he is entitled to habeas relief in light of the United States Supreme Court's decision in *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).[2] Petitioner

---

**1.** Since DiGrado's removal hearing was held in New Jersey, which is within the Third Circuit, jurisdiction over any petition for review filed by DiGrado would have been in that Circuit. *See* 8 U.S.C. § 1252(b).

**2.** In *St. Cyr,* the Court held that Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (which expands the categories of criminal convictions that render an alien ineligible for discre-

claims that he was wrongfully deported, because at that time he was eligible for discretionary relief under the now-repealed INA § 212(c).

Respondent Ashcroft filed a motion to dismiss the petition on November 26, 2001, to which petitioner filed a reply. In his reply, DiGrado argues that the motion to dismiss should be denied and all criminal proceedings involving him should be held in abeyance until a final determination of his immigration status is made by the immigration courts.

## II. *Discussion*

In support of his claim that he was wrongfully deported, petitioner contends that *St. Cyr* reveals that Immigration Judge Meisner erred in failing to consider at his deportation hearing whether he was entitled to a discretionary waiver of deportation based upon the factors enumerated in former INA § 212(c).

Respondent argues that jurisdiction to hear DiGrado's claims is lacking, and that, in any event, the petition is barred by the doctrine of res judicata.

### A. *Jurisdiction*

#### 1. *Applicability of 8 U.S.C. § 1252(g)*

■ Respondent argues that 8 U.S.C. § 1252(g) precludes judicial review of Di-Grado's claims. Thus, a review of this statute is warranted.

Title 8 of the United States Code provides, in relevant part:

1252. *Judicial review of orders of removal*

(g) Exclusive jurisdiction

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Although at first blush this statute might appear to have far reaching implications as to the jurisdiction of federal courts to hear claims relating to immigration matters, the Supreme Court has read this provision narrowly, holding that it does not cover the "universe of deportation claims." *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 482, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*AAADC* "). Instead, the Court held that this provision is relevant only as to the three discrete situations listed in the statute: (1) decisions to *commence* proceedings; (2) decisions to *adjudicate* cases; and (3) decisions to *execute* removal orders. *Id.* (emphasis in original).

Notwithstanding the express statements of the Supreme Court in *AAADC* concerning the scope of § 1252(g), respondent argues that the language of § 1252(g) not only prohibits judicial review of decisions to execute removal orders, but also as to all "subsequent attack[s] on final orders of removal that are executed." (Resp't Mem. Supp. Dismiss at 11.) In support of this

---

tionary relief under former Section 212(c) of the INA), and Section 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") (which repeals INA § 212(c)); do not apply retroactively to aliens who were placed in deportation proceedings after the AEDPA and IIRIRA became effective, but who pled guilty prior to the effective

date of those statutes. *St. Cyr*, 533 U.S. at ——, 121 S.Ct. at 2293. In the present case, it is undisputed that petitioner pled guilty to the underlying criminal offense prior to the enactment of the AEDPA and the IIRIRA, and therefore was eligible for § 212(c) discretionary relief from deportation. (*See* Pet. Ex. B.)

interpretation, respondent cites *Foster v. Townsley*, 243 F.3d 210 (5th Cir.2001).

The *Foster* Court, in discussing the substance of plaintiff's civil complaint, noted that:

> [t]he particular acts that form the basis of Foster's lawsuit arise from 'the officials' decision to execute his removal order. His claims of excessive force, denial of due process, denial of equal protection and retaliation are all directly connected to the execution of the deportation order. Therefore, their acts fall within the ambit of section 1252(g) and are precluded from judicial review.

*Id.* at 214–15. Thus, in sharp contrast to the present facts, the claims in *Foster* related directly to the manner in which the removal order was executed, and the court's finding in *Foster* that the plaintiff's claims were jurisdictionally barred by § 1252(g) was entirely appropriate. The challenge by DiGrado does not relate, in any way, to the decision of the Attorney General to execute the final order of removal. As respondent notes throughout his papers in support of his motion to dismiss, the deportation order was executed in 1999. Thus, *Foster* provides no support for respondent's jurisdictional argument.

Instead, the facts of this case are more analogous to those found in *Morel v. Reno*, 98 F.Supp.2d 1172 (D.Nev.1999). In *Morel*, the petitioner challenged the determination of the Immigration Judge, affirmed by the BIA, that he could not apply for § 212(c) relief. The *Morel* Court noted that:

> The determination of ineligibility does not implicate any decision of the Attorney General to commence proceedings, adjudicate the case, or execute an order of deportation. Therefore, § 1252(g)

does not operate to preclude jurisdiction over the present action.

*Id.* at 1178 (internal footnote omitted).

Thus, neither the text nor the United States Supreme Court's interpretation of § 1252(g) supports respondent's argument that jurisdiction is lacking to consider DiGrado's claims.

### 2. *Custody Requirement of 28 U.S.C. § 2241*

■ The respondent also argues that jurisdiction over the present action is lacking because DiGrado is currently in the custody of the United States Marshal's Service, and not in the custody of the INS. Thus, he claims that this Court lacks personal jurisdiction over the respondents.

In *St. Cyr*, the Court held that 28 U.S.C. § 2241 remains a proper vehicle for entertaining challenges to INS removal decisions which raise questions of law. *St. Cyr*, 121 S.Ct. at 2278–87; *see also Lawrence v. INS*, No. 00 CIV 2154, 2001 WL 818141, at *2 (S.D.N.Y. July 20, 2001). However, *St. Cyr* did not consider the issue of whether a petitioner is presently in the custody of the Attorney General to meet the custody requirements of § 2241.

■ "Absent custody by the authority against whom relief is sought, jurisdiction usually will not lie to grant the requested writ." *Severino v. Thornburgh*, 778 F.Supp. 5, 6 (S.D.N.Y.1991) (quoting *Campillo v. Sullivan*, 853 F.2d 593, 595 (8th Cir.1988)). DiGrado must be in the custody of the INS to obtain the habeas relief he seeks. 28 U.S.C. § 2241(c); *Deutsch v. United States*, 943 F.Supp. 276, 278 (W.D.N.Y.1996) ("[i]n order for this Court to have jurisdiction over [petitioner's] habeas claims, [he] must be in the custody of INS"); *Dearmas v. INS*, No. 92 Civ. 8615, 1993 WL 213031, at *3 (S.D.N.Y. June 15, 1993)(finding that lodging of an INS de-

tainer does not place the prisoner in INS custody).

Although the INS has apparently lodged a detainer against DiGrado, doing so did not place DiGrado within the custody of the INS or provide habeas jurisdiction over the respondents. *Deutsch,* 943 F.Supp. at 278 ("[c]ourts in this Circuit uniformly have held that the mere filing of an INS detainer fails to satisfy the 'in custody' requirement for habeas corpus jurisdiction"); *Dearmas,* 1993 WL 213031, at *3.

In his reply, DiGrado argues that several courts have considered the merits of habeas applications filed in similar circumstances, and that, therefore, his petition should not be dismissed. However, all of the cases cited by DiGrado are readily distinguishable from the case at bar.

In *Halley v. Reno,* No. 99–CV–4710, 2001 WL 184571 (E.D.N.Y. Feb.21, 2001), the respondents did not contest that petitioner was in INS custody. Rather, they argued that the INS District Director in Louisiana was sole custodian of petitioner, over whom the court lacked personal jurisdiction. *Id.* at *1. The court found that the Attorney General was the proper custodian, over whom the court had personal jurisdiction. *Id.*

Similarly, in *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997), at issue was identifying the proper custodian. The court considered that question after finding that both petitioners were clearly in the custody of the INS. *See id.* at 165–66.

Finally, in *Nwankwo v. Reno,* 828 F.Supp. 171 (E.D.N.Y.1993), the respondent argued that the properly named custodian in a habeas petition must be "the jailer who has day-to-day control of the prisoner," rather than the Attorney General. *Id.* at 173. The Court noted that "[t]here are compelling reasons of policy why the Attorney General should not normally be regarded as the custodian of a habeas petitioner." *Id.* at 173–74. However, it ruled that the Attorney General could be named as the proper respondent due to the "extraordinary additional considerations" which existed in that particular case, including an "atypical and unanticipated volume of habeas corpus petitions ... beyond the capability of the district court to process in a timely fashion." *Id.* at 174. In *Nwankwo* the petitioner was released to INS custody after completing a sentence on federal drug charges. *Id.* at 172. He was incarcerated at the Federal Deportation Center at Oakdale, Louisiana, awaiting deportation proceedings. *Id.* Thus, there was no question that "[t]he Attorney General [was] plainly the legal custodian of the petitioner." *Id.* at 174.

The prevailing view in the federal courts, including all of the districts within this state that have considered this issue, is that a federal habeas petitioner raising a claim concerning the issue of deportability must be in the custody of the INS when the suit is commenced. *See, e.g., Deutsch,* 943 F.Supp. at 278 (W.D.N.Y.); *Severino,* 778 F.Supp. at 6 (S.D.N.Y.); *Wang v. Reno,* 862 F.Supp. 801, 813 (E.D.N.Y. 1994). DiGrado was arrested on federal criminal charges. He is currently in the custody of the United States Marshals Service, on bail, awaiting trial on those charges. He is not being held pursuant to an INS deportation order or pending deportation proceedings. Therefore, petitioner is not in the custody of the Attorney General or the INS, and jurisdiction is lacking pursuant to § 2241. *See, e.g., Deutsch,* 943 F.Supp. at 278 ("[b]ecause [petitioner] is not currently in INS custody, his claim for habeas corpus relief against the INS is dismissed for lack of jurisdiction"); *Thompson v. INS,* 941 F.Supp. 30, 32 (W.D.N.Y.1996)(dismissing petition under § 2241 because petitioner was in custody of Bureau of Prisons and not the INS); *Severino,* 778 F.Supp. at 7

(declining to adopt Report–Recommendation of Magistrate Judge that found petitioner was in custody of INS in light of detainer lodged against petitioner; district court dismisses petition brought against Attorney General as custodian of petitioner); *Dearmas,* 1993 WL 213031, at \*2.

The merits of respondent's res judicata argument provides an alternative grounds for dismissal, and therefore is discussed below.

## B. *Res Judicata*

■ The respondent argues that the petition should also be dismissed because "[t]he doctrine of res judicata prevents DiGrado from relitigating his order of removal in this Court by way of habeas corpus." (Resp't Mem. Supp. Dismiss at 6.)

■ " 'Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action.' " *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 502, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001)(quoting *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); see *Stephenson v. Dow Chemical Co.,* 273 F.3d 249, 259 (2d Cir.2001). This doctrine applies with full force in the context of immigration proceedings. *Hibbert v. INS,* 554 F.2d 17, 20 (2d Cir.1977) (finding deportation order res judicata); *Medina v. INS,* 993 F.2d 499, 503–04 (5th Cir.1993) (finding that the "venerable legal canon" of res judicata applies to final, valid judgments of the BIA); *Ramon–Sepulveda v. INS,* 824 F.2d 749, 750 (9th Cir. 1987)(per curiam)(doctrine of res judicata applicable to findings of INS in deportation proceedings); *Spinella v. Esperdy,* 188 F.Supp. 535, 542 (S.D.N.Y.1960) ("plaintiff, as heretofore indicated, has litigated the question of his prior deportation.... [T]he determinations in [prior

courts concerning the issue of his deportability] are res judicata as to any issues raised here").

■ Although DiGrado is correct in contending that hindsight reveals that both Immigration Judge Meisner and the BIA, in light of *St. Cyr,* incorrectly retroactively applied certain provisions of the AEDPA and IIRIRA to his detriment this fact does not somehow render the doctrine of res judicata inapplicable in the present action. As the *Medina* Court noted in applying the doctrine of res judicata to the immigration case before it:

> res judicata precludes a second suit on the same issue between the same parties when there has been a valid and final judgment on that issue; and *it makes no difference that the final, valid judgment may have been based on an erroneous factual finding or an erroneous understanding of law, or both.* The only considerations for purposes of res judicata is [sic] whether the judgment was final and valid, and there was an opportunity to reach the merits. Here, these requirements were met.

993 F.2d at 504 (emphasis added).

The reasoning of *United States v. Hernandez–Rodriguez,* 170 F.Supp.2d 700 (N.D.Tex.2001) is persuasive in considering respondent's res judicata argument. In that case, the petitioner was admitted to the United States as a lawful and permanent resident in 1990. *Id.* at 701–02. In 1994 he was convicted of sexual assault. *Id.* at 702. This offense qualified petitioner as an "aggravated felon" for purposes of the immigration law. *Id.* Over petitioner's objection, the Immigration Judge retroactively applied the amendments to the immigration laws to petitioner's case and ordered him deported. *Id.* He was deported in 1999. *Id.*

In July 2001, petitioner re-entered the United States without obtaining the re-

quired consent of the Attorney General. *Id.* He was arrested and later indicted for the offense of illegal re-entry after deportation subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). *Id.* The petitioner moved to dismiss the indictment in the criminal case, arguing, *inter alia,* that the 1999 deportation was invalid as a requisite element of the offense of illegal re-entry, because it was based on an improper retroactive application of IIRI-RA and AEDPA in light of *St. Cyr. Id.* at 702–03. In denying the request to dismiss the indictment, that court held:

> Hernandez's sole allegation of fundamental unfairness [in the immigration hearings] is . . . based on the fact that at a later date the Supreme Court agreed with [petitioner's argument that the amendments to the AEDPA and IIRI-RA should not be retroactively applied to the petitioner] when advanced by another alien in another case. This establishes, however, only that [petitioner's] argument was substantively correct; it does not prove that, in considering and deciding [petitioner's case the immigration judge] committed any procedural errors rising to the level of due process violations and thus fundamental unfairness. *The court declines to hold that, because [the immigration judge] applied law that ultimately was deemed incorrect, the deportation proceeding was fundamentally unfair.*

*Id.* at 704 (emphasis added);[3] *see also Alvarenga–Villalobos v. Reno,* 133 F.Supp.2d 1164, 1168–69 (N.D.Cal.2000)(finding no due process violation where petitioner waived review in the earlier deportation proceeding), *aff'd,* 271 F.3d 1169 (9th Cir.2001).

■ In the present case, although Immigration Judge Meisner's decision ultimately proved to be an incorrect application of the revisions to the immigration laws, this fact did not render his decision void or otherwise subject to relitigation. Since the issue of his deportability has already been fully and fairly litigated, the doctrine of res judicata precludes DiGrado from relitigating this claim in the present habeas corpus action.[4]

### C. *Reconsideration*

■ Finally, DiGrado's petition must also be dismissed if viewed as one seeking to reopen or reconsider the BIA's finding regarding the issue of his deportability. The BIA may reopen or reconsider a decision it has rendered only prior to the alien's departure from the United States. 8 C.F.R. § 3.2(d). The INS regulations provide as follows:

> (d) Departure, deportation, or removal. A motion to reopen or a motion to reconsider shall not be made by or on behalf

---

**3.** The *Hernandez–Rodriguez* court also noted that the government was correct in its contention that the new principle of law articulated in *St. Cyr* could not apply to cases disposed of at a prior time. *Id.* at 704 n. 2. Specifically, it held that because the petitioner's case was no longer open on direct review when the Supreme Court decided *St. Cyr,* petitioner could "not in effect reopen his prior civil case through a collateral attack on his deportation order in this criminal proceeding." *Id.* (citing *Harper v. Va. Dep't of Taxation,* 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)).

**4.** A collateral challenge to the validity of a deportation order, which is used to form an element of the criminal offense, may be made where the alien was denied any possibility of judicial review of the deportation order. *United States v. Fernandez–Antonia,* 278 F.3d 150, 156–57 (2d Cir.2002)(citing *United States v. Mendoza–Lopez,* 481 U.S. 828, 838–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)). Any such challenge by DiGrado would be unavailing since judicial review of the BIA decision was available to him. He failed to pursue judicial review of his deportation order.

of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

8 C.F.R. § 3.2(d). The Second Circuit has observed that this regulation "terminates an alien's ability to move to reconsider or reopen upon physical deportation." *Vargas v. INS*, 938 F.2d 358, 361 (2d Cir. 1991). Thus, because DiGrado was deported, he cannot properly request that the BIA reconsider or reopen its prior decision which found him subject to deportation.

### III. *CONCLUSION*

Title 8, Section 1252(g) of the United States code does not preclude review of the merits of this habeas petition. DiGrado is not in the custody of the Attorney General or the INS; therefore jurisdiction is lacking pursuant to 28 U.S.C. § 2241. Petitioner's prior final deportation order, followed by his deportation, is res judicata of his immigration status at that time. Finally, the BIA cannot reconsider the final deportation order.

Accordingly, it is

ORDERED, that

1. Respondent's motion to dismiss is GRANTED and the petition is DISMISSED; and

2. Petitioner's request to hold all criminal proceedings involving him in abeyance until a final determination of his immigration status by the immigration courts is DENIED.

IT IS SO ORDERED.