UNITED STATES of America

v.

Julio Cesar MONTANO–
BENTANCOURT

No. DR 01–CR–32 WWJ.

United States District Court,
W.D. Texas,
Del Rio Division.

July 13, 2001.

Robert Arrambide, Russell M. Saloway, Assistant United State Attorneys, Del Rio, TX, for plaintiff.

Clare Koonta, Assistant Federal Public Defender, Del Rio, TX, for defendant.

## ORDER

JUSTICE, Senior District Judge.

Before the Court for consideration is the defendant's Motion to Dismiss the Indictment, filed on May 23, 2001. On June 11, 2001, the Government filed its Response to Defendant's Motion to Dismiss the Indictment, and on June 14, 2001, the defendant filed his reply to the Government's response. The defendant's motion then came before the court for oral argument on July 9, 2001. After considering the pleadings, the arguments of the parties, and the applicable authorities, the defendant's motion shall be, and is hereby, **GRANTED**.

## Factual Background

The defendant came to the United States from Colombia in 1978, and a year later, he attained permanent resident status. The defendant lived in the United States, apparently as a law-abiding citizen, until September 12, 1990, when he was convicted on charges of Aggravated Assault, False Imprisonment, and Battery, in violation of the Florida Criminal Code. For those convictions, the defendant was sentenced to a term of two years imprisonment with credit for time previously served. The defendant was then convicted a second time on March 13, 1992. The defendant's second conviction was for the offense of Burglary of a Dwelling with Assault or Battery, in violation of the Florida Criminal Code. For the second conviction, the defendant was sentenced to a term of two years imprisonment with credit for time previously served. On May 29, 1992, while the defendant was incarcerated for his second conviction, he was served with an Order to Show Cause and Notice of Hearing from the INS. Service was accomplished at the Liberty Correctional Institution, the site of the defendant's incarceration on the 1992 offense.

The Order to Show Cause informed the defendant that he was subject to deportation based on his two Florida convictions. The Order further stated that the date, time, and place of his deportation hearing would be set in the future by an immigration court.

On October 1, 1992, the defendant was released from the Liberty Correctional Institution to INS custody. On November 4, 1992, the defendant was released on a $10,000 immigration bond. The bond paperwork indicated that, upon his release from custody, the defendant would reside at 8703 Redwook, Tampa, FL 33604.

On June 9, 1993, the Office of the Immigration Judge sent to the defendant a notice of the time and date of his deportation hearing. However, the notice was not sent to the defendant's place of residence, but it was instead sent to the Liberty Correctional Institution. The notice was never forwarded to the defendant. Nonetheless, the defendant's deportation hearing went forward as scheduled. On August 13, 1993, Immigration Judge Rex R. Ford conducted the defendant's deportation hearing. Because the defendant was not present, it was found that the defendant had abandoned any claims for relief from deportation, and accordingly, Judge Ford ordered the defendant deported *in absentia.*

At the deportation hearing, Judge Ford noted that the defendant had not been given notice of the hearing, because the notice had been sent to the Liberty Correctional Institution, where the defendant no longer resided. However, Judge Ford went on to erroneously assert that the defendant had failed to provide the court with a forwarding address at which he could receive notice of the hearing. In fact, the defendant failed to receive notice through no fault of his own.

Over a year following the deportation hearing, the defendant was arrested, and on September 28, 1994, he was deported to Colombia.

On December 29, 2000, the defendant illegally reentered the United States. He was arrested shortly after his arrival, and he now stands charged, by Indictment, with the offense of Illegal Reentry after Deportation, in violation of 8 U.S.C. § 1326. The defendant has filed a motion to dismiss the Indictment on the grounds that his previous deportation was effected in violation of his constitutional right to due process.

## Legal Background

In *United States v. Mendoza–Lopez,* the Supreme Court held that nothing in 8

U.S.C. § 1326 indicated an intent on the part of Congress to allow collateral attacks to deportation proceedings in the context of § 1326 prosecutions. 481 U.S. 828, 837, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Nonetheless, the Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 838, 107 S.Ct. 2148 (emphasis in original). Accordingly, the Court held that, "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* at 839, 107 S.Ct. 2148.

In *United States v. Benitez–Villafuerte,* the Fifth Circuit outlined the required showing that a defendant must make before he can successfully collaterally attack a deportation order in a § 1326 proceeding. 186 F.3d 651, 658 (5th Cir. 1999). The defendant "must show (1) that the deportation hearing was fundamentally unfair, (2) that the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation, and (3) the procedural deficiencies caused him actual prejudice." *Id.*

## DISCUSSION

In the instant case, the defendant has clearly set forth the elements required in *Benitez–Villafuerte.* First, it is unquestionable that the deportation hearing was fundamentally unfair. The Supreme Court has stated clearly that due process, in the context of deportation proceedings, requires that the "alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *Id.* at 657. In this case, the defendant was given notice of the charges against him. However, because he was not given notice of the time, date, or place of the deportation hearing, he was not actually given an opportunity to be heard on the charges against him. Instead, he was deported without ever having an opportunity to contest the charges against him. This is a clear violation of the defendant's due process rights.

The second element that the defendant must show is that the deportation hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation. In *Mendoza–Lopez,* the Supreme Court held that where an immigration judge allows an alien to waive his right to appeal a deportation without requiring that such a waiver of appeal was the result of considered judgment by the alien, and where the judge failed to advise the alien of his eligibility to apply for suspension of deportation, the violation of the defendant's rights amounted to a complete deprivation of judicial review of the determination. 481 U.S. at 840, 107 S.Ct. 2148. In the instant case, without even being present, the defendant was found to have waived his right to raise any defenses to the deportation proceeding. Further, he was not given notice that the deportation order had issued until his time to appeal the order had already passed.[1] If the circumstances in

---

1. By statute, the defendant only had thirty days following the entry of the deportation order to file an appeal. 8 U.S.C. § 1105a(a)(1) (1993) (now codified at 8 U.S.C. § 1252). In addition, the defendant's right to appeal was considered waived because of his failure to appear.

*Mendoza–Lopez* amounted to a complete deprivation of judicial review, then it is without question that the defendant in the instant case was completely deprived of judicial review of his deportation order.

The last element that the defendant needs to show is that the procedural deficiencies caused him actual prejudice. In other words, in the absence of the procedural deficiencies, there must have been a reasonable likelihood that the alien would not have been deported. *See United States v. Lopez–Vasquez,* 227 F.3d 476, 483 (5th Cir.2000). In the instant case, it is found that the defendant has made a sufficient showing. First, as pointed out by the defendant at the oral argument on this matter, the defendant was released by the INS pending the deportation hearing. The decision to grant that release was based on similar factors to the ones that would have been considered in the defendant's actual deportation hearing, and thus the release itself suggests that the defendant had some reasonable probability of not being deported.

Second, the defendant would have been seeking relief from deportation pursuant to 8 U.S.C. § 1182(c). In determining whether to grant § 212(c) relief, the immigration judge must balance factors adverse to the alien against factors favorable to the alien. *See Matter of Marin,* 16 I. & N. Dec. 581, 584 (BIA 1978). The adverse factors include: (1) the nature and circumstances of the conduct that led to a finding of deportability; (2) the presence of significant violation of immigration laws; (3) the existence of a criminal record, its nature, recency, and seriousness; and (4) other evidence indicating bad character or undesirability as a permanent resident. *See id.* The favorable factors include: . (1) family ties within the United States; (2) lengthy residence in the United States (particularly when residence began when the alien

was young); (3) hardship to the alien and his family if the deportation occurs; (4) service in the Armed Forces; (5) a history of employment; (6) existence of property or business ties; (7) evidence of value and service to the community; (8) proof of genuine rehabilitation if a criminal record exists; and (9) other evidence attesting to an alien's good character. *See id.* As the defendant has pointed out, he could have presented a significant case to offset his rather serious convictions. He had lived in the United States since the age of 12. His son, a United States citizen, his mother, and his sister all lived in the United States. He had a history of steady employment. Both he and his son would have faced hardships, had the defendant been deported to Colombia. His son would have been denied his father's presence, and the defendant would have been sent to a war-torn country where the defendant had no close ties.

In further support of the defendant's showing of reasonable probability, Hugo Florido, Esquire, an experienced immigration lawyer from Florida, has filed an affidavit in this case indicating that in cases like the defendant's, the probability of the immigration judge granting § 212(c) relief is high.

Finally, the Supreme Court has recently recognized that between 1989 and 1995, over half of the applications for § 212(c) relief were granted, *see I.N.S. v. St. Cyr,* 531 U.S. 1107, 121 S.Ct. 2271, 2277, 150 L.Ed.2d 347 (2001), further indicating a high likelihood of success on the defendant's part.

The only argument advanced by the Government at the oral hearing in opposition to the defendant's motion was that the defendant did not make a showing that he "exhausted any administrative remedies that may have been available to seek re-

lief" against his deportation order, as required by 8 U.S.C. § 1326(d).

Section 1326(d) states that "an alien may not challenge the validity of the deportation order ... unless the alien demonstrates that: (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly denied the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

The Government argues that there is some distinction between the showing required by § 1326(d) and the showing required by *Benitez–Villafuerte*. The Fifth Circuit has held otherwise. *See Benitez–Villafuerte*, 186 F.3d at 658 n. 8 (holding that with the enactment of 8 U.S.C. § 1326(d), Congress effectively adopted the Fifth Circuit's reading of the requirements to make a collateral challenge pursuant to *Mendoza–Lopez*). Further, the availability of a collateral challenge to a deportation hearing is required by the Constitution, and *Mendoza–Lopez*, as construed in *Benitez–Villafuerte*, set out the sole requirements for raising a collateral challenge to a deportation proceeding. *See Benitez–Villafuerte*, 186 F.3d at 658. Congress was never the source for the defendant's power to raise a collateral challenge to a deportation proceeding. *See Mendoza–Lopez*, 481 U.S. at 837–8, 107 S.Ct. 2148. In fact, the Supreme Court expressly recognized in *Mendoza–Lopez* that Congress did not intend to allow a collateral challenge to a deportation proceeding in the context of a § 1326 proceeding. *Id.* To the extent that Congress has explicitly attempted to limit the defendant's ability to raise that challenge, it lacks the authority to do so. Congress may not deprive the defendant of the ability to raise a collateral attack that he is entitled to raise by the Constitution.

Finally, the Government has failed to indicate just what administrative proceedings the defendant failed to exhaust at the time he was deported. The only proceeding pointed to by the Government is the defendant's motion for reconsideration, currently pending in Florida. The Court is unpersuaded that the fact that the defendant's current desire to seek extraordinary relief implies a previous failure to exhaust administrative remedies.

The Government seems to be arguing that the defendant has a perpetual duty to exhaust administrative remedies. Such a reading, however, would render moot the defendant's ability to raise a collateral challenge, because the defendant would always be able to try one more time to obtain relief that he is unlikely to get. Moreover, it appears from the text of § 1326(d) that the administrative remedies in question are the ones that were available prior to the execution of the deportation order. *See, e.g., United States v. Hinojosa–Perez*, 206 F.3d 832, 836 (9th Cir. 2000) (discussing failure to exhaust administrative remedies in the context of predeportation remedies). The text reads, "the alien exhausted any administrative remedies that *may have been available* to seek relief against the order." 8 U.S.C. § 1326(d). Since the deportation itself executes the order, administrative remedies that come after the deportation would not appear to constitute relief from the order. Accordingly, since the Government has not alleged any failure to exhaust administrative remedies that were available prior to the defendant's deportation, it is found that the defendant's collateral challenge to his deportation order is not barred by 8 U.S.C. § 1326(d)(1).

### Conclusion

For the foregoing reasons, the defendant's Motion to Dismiss the Indictment shall be, and is hereby, **GRANTED.** Accordingly, it is

**ORDERED** that the Indictment in the above-entitled and numbered criminal action be **DISMISSED** with prejudice.