**UNITED STATES of America, Plaintiff,**

v.

**Jose OJEDA–ESCOBAR, Defendant.**

**No. CRIM.A.DR–01–CR–509–OG.**

United States District Court, W.D. Texas, Del Rio Division.

April 29, 2002.

Jay Anne Gilliland, Assistant U.S. Attorney, Del Rio, TX, for Plaintiff.

Clare Koontz, Federal Public Defender's Office, Del Rio, TX, Ramon Acosta Assistant United States Public Defender, El Paso, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ORLANDO L. GARCIA, District Judge.

Pending before the Court is Defendant's Motion to Dismiss or alternatively, Motion to Stay Proceedings (Dkt. # 17) and the Government's response thereto (Dkt. # 18). Having considered the parties' arguments, and having reviewed the record and applicable law, the Court finds as follows:

### I.

#### Factual and legal background

In 1990, after Defendant had resided in the United States for 15 years and attained permanent resident status, he was charged with violation of § 30.04 of the Texas Penal Code (burglary of a vehicle). Under the law then in effect, Defendant believed that a conviction would not prejudice his immigration status because the offense was not a deportable crime and, in any event, he would be eligible for relief from deportation, pursuant to § 212(c) of the Immigration and Naturalization Act.[1] Therefore, Defendant entered a guilty plea and was sentenced to three years suspended imprisonment.

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted, and amended certain provisions of the INA including the list of "aggravated felonies" which were deportable crimes.[2] On September 30, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) was also enacted, with

---

1. 8 U.S.C. § 1182(c).

2. The amendment was retroactive.

two important amendments to the INA, as amended by the AEDPA. First, the term "aggravated felony" was amended once again.[3] Second, § 304(b) of the Act repealed § 212(c) of the INA, which previously allowed broad discretion in granting waivers, and replaced it with a section excluding from the class of persons eligible for waiver anyone "convicted of an aggravated felony." *See* 8 U.S.C. § 1229b(a)(3). The IIRIRA amendments became effective April 1, 1997.

After the amendments, Defendant's offense, which was not "deportable" at the time of his plea, became a deportable crime.[4] It was also believed that § 304(b) of the IIRIRA (which repealed § 212(c) of the INA) was retroactive and that aliens who would have been eligible for § 212(c) waivers at the time of their guilty plea were no longer eligible and subject to deportation. As a result, the INS commenced deportation proceedings against many persons who would not have been subject to deportation prior to the amendments.

In October 1998, removal proceedings were commenced against Defendant. In April 1999, the Immigration Judge determined that Defendant was removable, pursuant to the recent amendments to the INA. The Board of Immigration Appeals (BIA) affirmed the removal. On direct appeal to the Fifth Circuit, the case was dismissed for lack of jurisdiction.[5] On July 17, 2000, the Defendant was removed from the United States.

On June 25, 2001, the U.S. Supreme Court rendered its decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), and ruled that the elimination of § 212(c) could *not* be applied retroactively to those persons who would have been eligible for § 212(c) relief at the time of their plea under the law then in effect.[6]

---

**3.** The amended definition was retroactive to include all convictions entered before, on or after the date of enactment.

**4.** *See* 8 U.S.C. § 1101(a)(43)(G).

**5.** The sole issue before the Fifth Circuit at that time was whether the offense was an "aggravated felony" under the amendments. *See Jose Ojeda–Escobar v. Janet Reno*, No. 99–60762 (5th Cir.2000).

**6.** Enrico St. Cyr was a citizen of Haiti who was admitted to the U.S. as a lawful permanent resident in 1986. Ten years later, on March 8, 1996, he pled guilty in a state court to a charge of selling a controlled substance in violation of Connecticut law. The offense made him deportable. However, he would have been eligible for a waiver of deportation under § 212(c) of the INA.

Removal proceedings were not commenced against St. Cyr until April 10, 1997—after the AEDPA and IIRIRA became effective. St. Cyr petitioned for habeas relief, alleging that the amendments should not eliminate his prior eligibility for a waiver. The INS responded by alleging that federal courts did not have jurisdiction to consider habeas petitions in deportation cases, and that § 212(c) should be applied retroactively and those persons who may have been eligible for a waiver prior to the amendments were no longer eligible.

The Supreme Court first determined that habeas jurisdiction under § 2241 was *not* repealed by AEDPA and IIRIRA; therefore, federal courts continue to have jurisdiction over deportation cases. 121 S.Ct. at 2287. The Supreme Court then analyzed the retroactivity argument. St Cyr's entry of a guilty plea had two consequences: first, he became subject to deportation; and second, he became eligible for a discretionary waiver of that deportation under § 212(c). The issue was whether the amendments changed the second consequence by eliminating his eligibility for a waiver. *Id.*

The Court applied well-settled principles of statutory construction and determined that § 304(b), which repealed § 212(c), was not to be applied retroactively. In doing so, the Court stated:

> The potential for unfairness in the retroactive application of IIRIRA § 304(b) to people like [St. Cyr] is significant and manifest. Relying upon settled practice, the advice of

On or about August 21, 2001. Defendant was found and arrested in Del Rio, Texas. On September 19, 2001, he was indicted for violation of 8 U.S.C. § 1326(a) and (b)(1), illegal re-entry into the United States. Defendant now makes a collateral attack on the underlying removal order, and claims that such removal order should not be used against him in these criminal proceedings.

## II.

### Application of the law

It does not appear that the parties dispute the following facts: Defendant pled guilty to a crime that was not deportable at the time, but later became a deportable aggravated felony under the amendments; and, Defendant would have been eligible for relief under § 212(c) at the time of his plea, under the law then in effect, but was not able to seek such relief at the time of his removal proceedings because § 304(b) of the IIRIA (applied retroactively) eliminated such relief. Under these facts, it is clear that Defendant falls squarely within the class of immigrants whose removal was based on an erroneous application of the law, as discussed in *St. Cyr.* The only question is how that affects the current criminal proceedings.

■ To prove its case under 8 U.S.C. § 1326, the Government must show that

(1) Defendant was an alien at the time alleged in the indictment, (2) he had previously been deported from the United States, (3) thereafter, he was found in the United States, and (4) he had not received the consent of the Attorney General to apply for readmission to the United States since the time of his previous deportation. In this case, Defendant claims that his deportation order was invalid; therefore, the Government cannot prove the second element of its case. *See U.S. v. Mendoza–Lopez.*, 481 U.S. 828, 107 S.Ct. 2148, 2152, 95 L.Ed.2d 772 (1987) (a defendant may challenge the validity of an underlying order of deportation in a criminal prosecution in which that prior deportation is an element of the crime).

■ To collaterally attack the deportation order, Defendant must show (1) that he exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). The Fifth Circuit also requires a showing of actual prejudice as a result of the alleged deprivation. *U.S. v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir.2000); *Mendoza–Lopez*, 107 S.Ct. at 2152.

counsel and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in [St. Cyr's] position agreed to plead guilty. Now that prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to "familiar considerations of fair notice, reasonable reliance, and settled expectations" to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief.

*Id.*, 121 S.Ct. at 2292 (citation omitted). The Court further stated that "[p]rior to AEDPA

and IIRIRA, [aliens] had a significant likelihood of receiving § 212(c) relief. Because [they] almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect." *Id.*, 121 S.Ct. at 2293. In conclusion, the Court stated:

> We therefore hold that 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for 212(c) relief at the time of their plea under the law then in effect.

*Id.*, 121 S.Ct. at 2293 (emphasis added).

## A. Exhaustion of administrative remedies:

 The Fifth Circuit has held that to exhaust administrative remedies, an immigrant must simply raise the issue on appeal at the agency level. *Goonsuwan v. Ashcroft*, 252 F.3d 383, 389 (5th Cir.2001); *see also U.S. v. Girosky–Garibay*, 176 F.Supp.2d 705, 712 (W.D.Tex.2001). The most recognized exception to this requirement is the futility argument—that resort to the agency would have been futile because it had no power to resolve the issue in the immigrant's favor. *Goonsuwan*, 252 F.3d at 389. In this case, Defendant appealed the IJ's decision to the BIA, and then appealed to the Fifth Circuit. Although it is not clear whether he attempted to pursue a waiver under § 212(c), the Government readily acknowledges that any attempt would have been futile based on the state of the law at that time. (Dkt. No. 18 @ p. 3).[7]

## B. Fundamental unfairness:

 The Court must next find that the removal proceedings were fundamentally unfair. *Lopez–Vasquez*, 227 F.3d at 483. Although in many instances, fundamental unfairness results from procedural deficiencies, as in *U.S. v. Montano–Bentancourt*, 151 F.Supp.2d 794 (W.D.Tex.2001), it may also result when the removal order is based on an erroneous application of the law, as in *Girosky–Garibay*, 176 F.Supp.2d at 711.[8]

In the recent case of *Girosky–Garibay*, the IJ determined that a felony DWI in Texas was an aggravated felony and that Girosky–Garibay should therefore be removed. 176 F.Supp.2d at 707–708. After he was removed, the Fifth Circuit, in *U.S. v. Chapa–Garza*, 243 F.3d 921, 927 (5th Cir.2001), held that a felony DWI conviction in Texas was *not* an aggravated felony. Girosky–Garibay re-entered the United States and was indicted for illegal re-entry. He collaterally attacked the removal order, pursuant to 8 U.S.C. § 1326(d) and *Mendoza–Lopez*, and the Court found that his removal proceedings had been fundamentally unfair and resulted in a denial of justice because the IJ had erroneously applied the law and the resulting deportation was unlawful. Although the law which was erroneously applied in this case is different than the law erroneously applied in *Girosky–Garibay*, the cases are otherwise indistinguishable.

 In *U.S. v. Hernandez–Rodriguez*, 170 F.Supp.2d 700, 704 (N.D.Tex.2001), the district court analyzed the same legal arguments but reached a different result. In that case, the fundamental unfairness issue was based on the *St. Cyr* decision, just as in this case. Citing *Harper v. Va. Dept. of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the court therein stated that the "new principle of law articulated in *St. Cyr*" should be limited to cases still open on direct review, and should not be extended to collateral

---

7. *See U.S. v. Hernandez–Rodriguez*, 170 F.Supp.2d 700, 703 (N.D.Tex.2001)("[t]he BIA could not have ruled in Hernandez's favor on his argument of improper retroactivity because the current law was to the contrary. It was not until the Supreme Court's decision in *St. Cyr* that retroactive application of the 1996 amendments to the INA ... was prohibited.").

8. *See also Mendoza–Lopez*, 107 S.Ct. at 2159 (Rehnquist, White and O'Connor JJ. dissent-

ing) ("Conspicuously absent from respondents' arguments to this Court is any suggestion that the Immigration Law Judge employed improper procedures *or erroneously applied the law* in determining that respondents were deportable") (emphasis added); *see also U.S. v. Hernandez–Avalos*, 251 F.3d 505 (5th Cir.2001) (the INS erroneously interpreted the law, but its interpretation was ultimately correct; therefore, the removal proceedings were not fundamentally unfair).

attacks on deportation orders. *See Hernandez–Rodriguez*, 170 F.Supp.2d at 704 n. 2. After reviewing the applicable law, this Court must disagree for several reasons.

■ First, the *St. Cyr* case *was* a collateral attack on a deportation order, and the Supreme Court clearly intended to extend its ruling to similar collateral attacks by "aliens, like [St. Cyr], whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 121 S.Ct. at 2293. The fact that Defendant is collaterally attacking the removal order in a subsequent criminal proceeding, rather than a habeas proceeding, should not make this case any different. Second, the *St. Cyr* decision should not be classified as a "new rule of federal law," because the Supreme Court was simply interpreting an existing statute that was being erroneously applied. The decision did not create new obligations for the Government or new rights for aliens. Instead, the Supreme Court simply confirmed that aliens who had the right to apply for § 212(c) relief at the time of their plea did not lose such right when the amendments later became effective. *St. Cyr*, 121 S.Ct. at 2293. A court's *interpretation* of a statute may be applied retroactively. *Girosky–Garibay*, 176 F.Supp.2d at 710; *U.S. v. Lopez*, 248 F.3d 427, 432 (5th Cir.2001). Finally, as the Court in *Girosky–Garibay* explained, "the requirements of *Mendoza–Lopez* and 8 U.S.C. § 1326(d) preclude the application of *Harper* because in order to succeed under these actions, a Defendant must demonstrate that there was no opportunity for meaningful direct review." 176 F.Supp.2d at 710.

Therefore, the Court finds that *St. Cyr* does apply in this case, and the ruling therein clearly supports a finding that Defendant's removal proceedings were fundamentally unfair and resulted in a denial of justice. As the Supreme Court stated in *St. Cyr*, "[t]he potential for unfairness in the retroactive application of IIRIRA § 304(b) ... is significant and manifest." 121 S.Ct. at 2292. If § 304(b) of the IIRIRA had not been retroactively applied at the time of his deportation proceedings, Defendant could have applied for § 212(c) relief. Although the Court cannot conclude with certainty that his application would have been granted, a substantial percentage of such applications have been granted over the years, and "there is a clear difference ... between facing possible deportation and facing certain deportation." *St. Cyr*, 121 S.Ct. at 2276, 2293.

## C. Deprivation of opportunity for judicial review:

■ The Court must also find that Defendant was denied the opportunity for meaningful judicial review of his deportation order. As noted above, the Government concedes that any appeal at the agency level would have been futile because the law, at that time, was being erroneously applied. On the other hand, the Government contends that Defendant was not denied meaningful judicial review.

The Court fails to see how Defendant's agency appeal would have been futile, but his appeal to the Fifth Circuit (which was limited to the same issues) was meaningful. Defendant was clearly deprived of the opportunity to apply for discretionary waiver, or to appeal that issue, at any level. Although he appealed to the Fifth Circuit, the only issue presented on appeal was the meaning of "aggravated felony" and the Court determined that it lacked jurisdiction to consider the case. (Dkt. # 17. Exh. A). There was no opportunity for meaningful judicial review of the deportation order.

## D. Actual prejudice:

 Finally, Defendant must show that erroneous application of the law, at the time of his removal proceedings, caused him to suffer actual prejudice. *Lopez–Vasquez*, 227 F.3d at 484; *Montano–Bentancourt*, 151 F.Supp.2d at 797; *Girosky–Garibay*, 176 F.Supp.2d at 713. This requires a showing that there was a reasonable likelihood that but for the errors complained of Defendant would not have been removed. On the other hand, if he was legally deportable and, despite the error(s), the proceeding could not have yielded a different result, he cannot show prejudice. *Lopez–Vasquez*, 227 F.3d at 484. As mentioned above, there is no question that Defendant, who had resided in the United States for more than 15 years, and who had attained permanent resident status, would have been eligible for § 212(c) relief if § 304(b) of the IIRIRA had not been erroneously applied. The Court further believes there was a reasonable likelihood that Defendant's application for waiver would have been granted, considering the "substantial percentage" of applications that have been granted by the Attorney General. *St. Cyr*, 121 S.Ct. at 2277. Thus, the requirement of actual prejudice is met in this case.

It is therefore ORDERED that Defendant's Motion to Dismiss (Dkt. # 17) is GRANTED.