UNITED STATES of America,

v.

Bernardino SOTELO–MENDOZA.

No. EP–02–CR–1268–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 18, 2002.

James N. Langell, El Paso, TX, for defendant.

Brandy Gardes, Assistant U.S. Attorney, El Paso, TX, for Plaintiff.

### ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant Bernardino Sotelo–Mendoza's "Motion to Dismiss the Indictment," filed in the above-captioned cause on October 18, 2002. The Government filed a Response on October 23, 2002, to which Defendant filed a Reply on November 6, 2002.

On July 24, 2002, Defendant was indicted pursuant to 8 U.S.C. § 1326(a)(1) and (b)(2).[1] Thereafter, Defendant filed the instant Motion challenging the validity of his prior order of removal from the United States upon which the Government based

---

1. Title 8 U.S.C. § 1326(a) authorizes a prison term of up to two years and a possible fine for any alien who, after having been excluded, deported, removed or having departed the United States while an order of exclusion, deportation, or removal was outstanding, enters, attempts to enter, or is found in the United States, unless prior to the alien's reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission. Title 8 U.S.C. § 1326(b)(2) authorizes a prison term of up to twenty years for any alien described in § 1326(a) if the initial deportation occurred subsequent to the commission of an "aggravated felony."

its charges of illegal re-entry after deportation pursuant to 8 U.S.C. § 1326. After due consideration, the Court is of the opinion that Defendant's Motion should be denied for the reasons set forth below.

## BACKGROUND

Defendant was born in Mexico in 1929 and arrived in the United States during the 1950's as a laborer in the Bracero Program. He obtained permanent resident alien status in 1963. In 1982 and 1983, Defendant was convicted of two separate offenses in Kern County, California. In April 1982, Defendant pled guilty to a violation of § 647a of the California Penal Code for annoying/molesting a child[2] in Bakersfield, California and ordered to serve forty-five days in jail as a term of three years probation. On July 28, 1983, Defendant pled guilty to annoying/molesting a child pursuant to § 647a, and having previously been convicted of an offense under the same statute, thereafter sentenced to two years of imprisonment. Defendant was again convicted on December 23, 1992, when he pled guilty to possession of heroin for sale, in violation of § 11351 of the California Health and Safety Code, and was sentenced to confinement for a period of 176 days.

On October 28, 1999, the Immigration and Naturalization Service ("INS") served Defendant with a Notice to Appear charging him with removability as an aggravated felon under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 10 Stat. 3009–546 (1996), based on his 1992 conviction for possession of heroin for sale.[3] On January 3, 2000, the Immigration Judge ("IJ") ordered him removed from the United States as an alien who had been convicted of an aggravated felony and had no other relief from deportation available to him. Following his decision, the IJ explained that Defendant may appeal the decision to the Board of Immigration Appeals ("BIA") or accept deportation to Mexico. Defendant announced that he wanted to appeal the decision. Defendant appealed to the BIA on the ground, *inter alia*, that the IJ erred in failing to consider Defendant for relief under § 212(c), discussed below. The BIA dismissed Defendant's appeal, finding that Defendant was ineligible for relief from removal. The BIA construed Defendant's § 212(c) claim as a complaint that "the IJ erred in failing to advise him of his eligibility for a section 212(c) waiver." As to that claim, the BIA held, "[t]o the extent the respondent is seeking relief from deportation under section 212(c) of the [Immigration and Nationality] Act, 8 U.S.C. § 1182(c), we note

2. At the time of Defendant's conviction, Section 647a of the California Penal Code provided: Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable by a fine not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment. Every person who violates this section after having entered, without consent, an inhabited dwelling house, or trailer coach as defined in Section 635 of the Vehicle Code, or the inhabited portion of any other building is punishable upon the second and each subsequent conviction or upon the first conviction after a previous conviction under Section 288 by imprisonment in the state prison. CAL.PENAL CODE § 647a (current law at CAL.PENAL CODE § 647.6 (1999)).

3. Pursuant to 8 U.S.C. § 1101(a)(43)(B), a conviction for possession of heroin for sale is an aggravated felony ("The term 'aggravated felony' means illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18).") and thus, a deportable offense under 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable.").

that this relief is no longer part of the Act, as it was repealed and is not available in removal proceedings." On May 16, 2000, Defendant was removed from the United States.

According to the Indictment in the instant cause, subsequent to Defendant's removal, he re-entered the United States on July 8, 2002. On July 24, 2002, he was indicted pursuant to 8 U.S.C. § 1326(a)(1) & (b)(2). The Indictment alleges that Defendant, "an alien, who had previously been excluded, deported, and removed from the United States on or about May 16, 2000, and who had not received the consent of the Attorney General of the United States to re-apply for admission, attempted to enter, entered and was found in the United States . . . ."

## DISCUSSION

Defendant filed the instant Motion arguing that his removal proceeding was so fundamentally unfair and prejudicial that, under *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), his removal cannot be used as an element in this prosecution. Specifically, Defendant, citing *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), argues that his removal was fundamentally unfair and prejudicial because he was unlawfully denied the right to obtain discretionary relief under § 212(c) ("212(c) waiver" or "212(c) relief") of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c).

### A. Legal Standard

■ In order to challenge the use of a prior removal order in a prosecution for illegal re-entry under 8 U.S.C. § 1326, Defendant must satisfy the requirements set forth by the Supreme Court in *United States v. Mendoza–Lopez*. The Fifth Circuit, interpreting *Mendoza–Lopez*, has held that in order to challenge the validity of an underlying deportation order described in an indictment made pursuant to 8 U.S.C § 1326(a) or (b), an alien must establish that: "(1) the prior hearing was 'fundamentally unfair'; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice." *United States v. Lopez–Vasquez*, 227 F.3d 476, 483 (5th Cir.2000) (citations omitted). If a defendant fails to establish one of the elements, a court need not consider the others. *United States v. Encarnacion–Galvez*, 964 F.2d 402, 407 (5th Cir.1992) (citing *United States v. Palacios–Martinez*, 845 F.2d 89, 92 (5th Cir. 1988); *United States v. Saucedo–Velasquez*, 843 F.2d 832, 836 n. 6 (5th Cir.1988)).

According to the Fifth Circuit, Congress effectively codified its interpretation of *Mendoza–Lopez* in 8 U.S.C. § 1326(d), which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) of this section unless the alien demonstrates that:
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also United States v. Benitez–Villafuerte*, 186 F.3d 651, 658 n. 8 (5th Cir.1999).

## B. 212(c) Waivers

Prior to 1997, certain aliens in deportation or exclusion proceedings could apply for a 212(c) waiver of criminal convictions or other excludable or deportable offenses. Under § 212(c) of the Immigration Act of 1952, "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General...." 8 U.S.C. § 1182(c) (repealed 1996). Although § 212(c) expressly applied only to aliens who temporarily left the United States, federal courts and the INS ruled that permanent resident aliens who had not left the country and met the seven-year requirement could also apply for a discretionary waiver from deportation. *See St. Cyr*, 533 U.S. at 295, 121 S.Ct. at 2276 (citations omitted).

In 1990, Congress narrowed the availability of discretionary waivers and amended former § 212(c) to provide that a waiver was not available "to any alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years." Immigration Act of 1990 ("IMMACT"), Pub.L. No. 101–649, § 511(a), 104 Stat. 4978, 5052 (1990) (amending former 8 U.S.C. § 1182(c)). This amendment was further revised by the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991 ("MTINA") to clarify that the five-year term could be served on multiple convictions. Pub.L. No. 102–232, § 306(a)(10), 105 Stat. 1742 (1991). MTINA replaced the phrase "an aggravated felony and has served" with "one or more aggravated felonies and has served for such felony or felonies." § 306(a)(10), 105 Stat. at 1751. The amendment became effective with the enactment of IMMACT. *Id.* § 310, 105 Stat. at 1759.

Under § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Congress expanded the statutory ban on 212(c) waivers by rendering ineligible for relief aliens who were deportable based on convictions for certain criminal offenses, including aggravated felonies, controlled substance offenses, certain firearms offenses, national security violations, and more than one crime of moral turpitude, regardless of the time served. Pub.L. No. 104–132, 110 Stat. 1214, 1277 (effective April 26, 1996). Later that year, Congress passed IIRIRA, which repealed § 212(c) in its entirety, and substituted a new form of relief, known as cancellation of removal. 8 U.S.C.A. § 1229b (West 1999).[4] According to the Attorney General, these amendments withdrew his 212(c) authority to waive deportation for aliens previously convicted of aggravated felonies. *See St. Cyr*, 533 U.S. at 297, 121 S.Ct. at 2277–78. Before the Supreme Court's decision in *St. Cyr*, immigration judges universally held, as did the judge in the instant case, that an immigrant placed in deportation or removal proceedings after April 1, 1997, the effective date of IIRIRA, could not apply for 212(c) relief.

**4.** Under the new provision in IIRIRA, fewer immigrants are eligible to apply for cancellation of removal than were eligible to apply for 212(c) waivers. This results because the requirements for eligibility of cancellation of removal are stricter than the requirements for eligibility of 212(c) waivers. *See, e.g.,* 8 U.S.C. § 1229b(d)(1) (providing that the continuous presence necessary for eligibility for cancellation of removal ends upon the filing of a Notice to Appear or upon the commission of certain criminal convictions). Moreover, Congress broadened the category of crimes, specifically the definition of "aggravated felony," which makes an immigrant ineligible for relief. *See, e.g.,* 8 U.S.C. § 1101(a)(43) (defining aggravated felony convictions).

In *St. Cyr*, the United States Supreme Court held that although 212(c) relief had been repealed, aliens who were removable under IIRIRA were still eligible to apply for a 212(c) waiver if their convictions were "obtained through plea agreements" and "notwithstanding those convictions, [those aliens] would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *St. Cyr*, 533 U.S. at 326, 121 S.Ct. at 2293. The Court reasoned that the repeal of 212(c) relief should not apply retroactively to individuals who participated in plea bargaining under the impression that they could eventually apply for such relief, finding that the elimination of such relief "has an obvious and severe retroactive effect." *Id.* at 325, 121 S.Ct. 2271.

Defendant, citing *St. Cyr*, alleges that he should have been allowed to apply for 212(c) relief during his removal proceedings. Defendant alleges that at the time he pled guilty in 1992 for possession of heroin for sale, he was eligible to apply for a 212(c) waiver, and he relied on this belief when he pled guilty. If this is true, then under *St. Cyr*, Defendant would be able to apply for 212(c) relief with respect to his 1992 conviction for possession of heroin for sale, and potentially with respect to his prior convictions from 1982 and 1983.

As an initial matter, Defendant has established that he is eligible for 212(c) relief. First, Defendant proves that he meets the seven-year domicile requirement, based on evidence that he has resided in the United States as a legal permanent resident since 1963. Second, at the time of his removal proceedings, Defendant was not convicted of one or more aggravated felonies for which he served a term of imprisonment of at least five years. For his 1992 conviction for possession of heroin for sale, which the IJ determined constituted an aggravated felony, Defendant received a term of imprisonment of 176 days. As for Defendant's convictions in 1982 and 1983 for annoying/molesting a child, the Government contends that they also constitute aggravated felonies.[5] Even if, *arguendo*, those offenses constitute aggravated felonies under IIRIRA, Defendant did not serve a sufficient period of prison time so as to render him ineligible for a 212(c) waiver. Defendant served a two-year term of imprisonment for the 1983 conviction and served forty-five days imprisonment for his 1982 conviction. Thus, Defendant served an aggregate term of less than five years in prison for all of his convictions.

Therefore, the Court finds that Defendant was statutorily eligible for a 212(c) waiver at the time of his plea in 1992 and during his removal proceedings, when he requested such relief. Thus, Defendant falls within the class of individuals who, according to *St. Cyr*, were deprived of consideration for 212(c) relief based on an impermissible retroactive application of the law. Having established Defendant's eligibility for 212(c) relief under the requirements set forth in *St. Cyr*, the Court must determine whether this deprivation renders his removal order invalid pursuant to the requirements of *Mendoza–Lopez* and 8 U.S.C. § 1326(d).

### C. Exhaustion of Administrative Remedies

Defendant contends that he exhausted his administrative remedies by appealing his removal order to the BIA. The Government argues that Defendant failed to ex-

---

**5.** It should be noted that although the INS was aware of Defendant's convictions from 1982 and 1983, the Notice to Appear did not charge Defendant as removable based upon those convictions.

haust his administrative remedies because he did not appeal the BIA's decision to the Fifth Circuit. Relying on the transcript of the January 3, 2000 removal hearing, Defendant counters that he did not appeal the BIA's decision to the Fifth Circuit because he was not informed that he could do so by the IJ. Nor was he informed by the BIA at the time it dismissed his appeal.

■ The Court agrees with Defendant. The Fifth Circuit has held that an immigrant must simply raise an issue on appeal at the agency level to exhaust administrative remedies. *See Goonsuwan v. Ashcroft,* 252 F.3d 383, 389 (5th Cir.2001) (where alien presented to the BIA the issue raised in his habeas corpus petition, alien exhausted his administrative remedies *as to that issue* ). Defendant's appeal to the BIA was based, in part, on the IJ's failure to consider 212(c) relief. The BIA dismissed the appeal on the grounds that 212(c) discretionary waivers had been repealed by IIRIRA. Therefore, the Court finds that Defendant exhausted his administrative remedies with regard to the claim that he raises before the Court today.

### D. Fundamental Unfairness

■ The Court must next find that the removal proceedings were fundamentally unfair. *Lopez–Vasquez,* 227 F.3d at 483. In other words, Defendant must demonstrate that the defect in the removal proceeding resulted in "a denial of justice" or a denial of due process of law. *United States v. Hernandez–Avalos,* 251 F.3d 505, 507 (5th Cir.), *cert. denied,* 534 U.S. 935, 122 S.Ct. 305, 151 L.Ed.2d 226 (2001). Defendant claims that his removal proceeding was fundamentally unfair in at least two ways: (1) that the IJ failed to inform him of his eligibility for 212(c) relief and (2) that the BIA denied his request for a hearing on 212(c) relief. Both errors were based on the erroneous understand-

ing by the IJ and the BIA that 212(c) relief had been repealed by IIRIRA. Unfortunately for Defendant, his arguments have been foreclosed by the holding in the recent Fifth Circuit case, *United States v. Lopez–Ortiz,* 313 F.3d 225 (5th Cir.2002).

In *Lopez–Ortiz,* the Government appealed a district court's order suppressing a defendant's prior removal and dismissing the indictment against him for illegal re-entry in violation of 8 U.S.C. § 1326(a)(1) and (b)(2). *Lopez–Ortiz,* at 227. Lopez–Ortiz, a permanent resident in the United States since 1990, had previously been convicted twice of misdemeanor driving while intoxicated ("DWI") before pleading guilty to felony possession of cocaine in 1995. *Id.* In 1998, Lopez–Ortiz was served with a Notice to Appear by the INS and charged as an aggravated felon on the basis of his 1995 cocaine conviction. *Id.* At his removal hearing, Lopez–Ortiz was not advised by the IJ that he was eligible to apply for a 212(c) waiver. *Id.* Instead, the IJ advised Lopez–Ortiz that he had the right to appeal. *Id.* Nonetheless, Lopez–Ortiz waived his right to an administrative appeal and was deported. *Id.* Lopez–Ortiz re-entered the United States and was convicted of a felony DWI in 2000. *Id.* His prosecution for illegal re-entry followed. *Id.* Lopez–Ortiz moved to suppress his prior removal order on the ground that his removal hearing failed to afford him due process. *Id.* Specifically, he claimed that the IJ failed to inform him of the possibility of 212(c) relief, thereby rendering his removal hearing fundamentally unfair. *Id.*

■ In reviewing Lopez–Ortiz's collateral challenge to his prior removal order, the Fifth Circuit held that fundamental fairness is a question of procedure. *Id.* at 231. In order to comport with due process, an alien facing deportation must be provided with "(1) notice of the charges against him, (2) a hearing before an executive or

administrative tribunal, and (3) a fair opportunity to be heard." *Id.* (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953)). The court determined that Lopez–Ortiz did not contest that he was provided with these protections and that his challenge to the fundamental fairness of his removal proceedings was predicated solely on the IJ's error in not explaining his eligibility for 212(c) relief. *Id.*

However, as to the IJ's failure to inform Lopez–Ortiz of the possibility of 212(c) relief, the court held that denial of 212(c) discretionary relief does not implicate the Due Process clause. *Id.* In considering the effect of *St. Cyr*, the court held that the Supreme Court's decision "was not grounded in 212(c) relief having the status of a constitutionally protected interest;" rather, it was based on the Court's interpretation of IIRIRA." *Id.*[6] Moreover, the court reasoned, because 212(c) relief "is available within the discretion of the Attorney General, it is not a right protected by due process." *Id.* Therefore, "[b]ecause eligibility for 212(c) relief is not a liberty or property interest warranting due process protection," the IJ's error did not rise to the level of fundamental unfairness. *Id.* at 231.

In an effort to distinguish his case, Defendant argues that, unlike Lopez–Ortiz, he appealed the IJ's decision to the BIA, thereby requesting a hearing on 212(c) relief, which was denied. Because Lopez–Ortiz never applied for 212(c) relief, he was never denied a hearing and could not establish a due process violation. The Court disagrees. If, under *Lopez–Ortiz*, fundamental fairness is strictly a question of *procedure*, then Defendant has not shown that the procedure applied to him was so deficient as to rise to the level of fundamental unfairness. As to Defendant's claim that the IJ never informed him that he was eligible for relief under 212(c), his argument is squarely rejected by the holding in *Lopez–Ortiz*. As to Defendant's claim that he was denied a hearing and opportunity to be heard when the BIA denied his request for 212(c) relief, his contention also fails. Unlike Lopez–Ortiz, Defendant was given an opportunity to appeal the IJ's decision and present his argument before the BIA that 212(c) relief remained available to him, and the BIA ultimately disagreed. According to the Fifth Circuit, the fact that the BIA denied his request based on an erroneous understanding of the availability of 212(c) does not constitute a violation of due process because Defendant has no constitutional entitlement to eligibility for discretionary relief. Defendant brings forth no other error that raises a procedural violation of notice, hearing, or opportunity to be heard as required by *Lopez–Ortiz* and, therefore, cannot prevail on the element of fundamental fairness.

Moreover, Defendant's claim that he was denied a hearing on 212(c) relief was previously addressed, albeit prior to *Lopez–Ortiz*, by another district court in *United States v. Hernandez–Rodriguez*, 170 F.Supp.2d 700 (N.D.Tex.2001). *Hernandez–Rodriguez* also involved a collateral attack, based on *St. Cyr*, on a prior removal order. *Hernandez–Rodriguez*, 170

**6.** The court acknowledged that *St. Cyr* "finally decided what [IIRIRA] had *always* meant and explained why the [BIA and the] Courts of Appeals had misinterpreted the will of the enacting Congress." *Id.* at 230 (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)).

The court also noted that *St. Cyr* had established Lopez–Ortiz's eligibility for 212(c) relief at the time of his removal, contrary to the IJ's understanding, and that such an interpretation was an "erroneous application of the law." *Id.*

F.Supp.2d. at 701. Defendant Hernandez–Rodriguez claimed that his hearing was fundamentally unfair because the IJ disregarded his contention, made in open court, that the 1996 amendments to IIRIRA were improperly retroactively applied in his case. *Id.* at 702. The IJ disagreed and ordered Hernandez–Rodriguez deported. *Id.* Hernandez–Rodriguez did not appeal the IJ's decision to the BIA. *Id.* at 703.

The district court held that "fundamental fairness is solely an issue of procedural due process." *Id.* at 704. Hernandez–Rodriguez, the court determined, "improperly attempt[s] to turn the fundamental fairness inquiry, which is procedural in nature, into an expanded, substantive inquiry." *Id.* at 703. Because Hernandez–Rodriguez did not assert that he was prevented from making the *St. Cyr* argument at his deportation hearing, the court deemed his allegation a substantive one. *Id.* The court explained:

> The retroactive application of the 1996 INA amendments to Hernandez's case does not rise to the level of a due process violation and therefore did not render the deportation hearing fundamentally unfair. Hernandez received notice of the intent to remove him to Mexico and a hearing before an immigration judge. He was able to present all relevant arguments at that hearing, including his contention that the 1996 amendments were improper in their retroactive application. Hernandez was not, as he alleges, denied a hearing on §§ 212(c) and (h) waivers. Rather, he was allowed to argue that he was eligible for such waiver, and [the IJ] ultimately ruled that, under the 1996 INA amendments, he was not. Hernandez's sole allegation of fundamental unfairness is thus based on the fact that at a *later* date the Supreme Court agreed with this argu-

ment when advanced by another alien in another case. This establishes, however, only that Hernandez's argument was substantively correct; it does not prove that, in considering and deciding it, [the IJ] committed any *procedural* errors rising to the level of due process violations and thus fundamental unfairness. The court declines to hold that, because [the IJ] applied law that ultimately was deemed incorrect, the deportation proceeding was fundamentally unfair.

*Id.* at 704. Whereas the court's reasoning in *Hernandez–Rodriguez* was previously open to question, it now appears that the Fifth Circuit has approved of the court's interpretation of fundamental unfairness claims predicated on *St. Cyr.* Not only has the Fifth Circuit endorsed Hernandez–Rodriguez's holding that fundamental fairness is solely a question of procedure, the court has gone one step further in closing off relief in this area by holding that 212(c) relief, because of its discretionary nature, is not a liberty or property interest meriting due process protection.

It should be noted that this Court has previously held that fundamental unfairness results when a removal order is based on an "erroneous interpretation of the law." *See United States v. Girosky–Garibay,* 176 F.Supp.2d 705, 711 (W.D.Tex. 2001) (holding that the IJ and BIA's erroneous ruling that a felony DWI conviction in Texas is a "crime of violence" and hence, an "aggravated felony," rendered alien's deportation unlawful). The reasoning in *Girosky–Garibay* was adopted by another court in the Western District of Texas faced with the precise question posed in the instant cause. *See United States v. Ojeda–Escobar,* 218 F.Supp.2d 839 (W.D.Tex.2002) (finding erroneous interpretation of the law and therefore, fundamental unfairness, where IJ and BIA

ruled that alien was not eligible for relief from deportation based on conclusion that 212(c) relief had been repealed by IIRIRA).

*Ojeda–Escobar* also involved a collateral attack on a prior removal order by a defendant who was removed based on the erroneous understanding by the IJ that defendant could no longer apply for 212(c) relief. *Ojeda–Escobar,* 218 F.Supp.2d at 842. The court in *Ojeda–Escobar* expressly disapproved of the district court's reasoning in *Hernandez–Rodriguez,* finding that fundamental unfairness may not only result from procedural deficiencies, but also "when the removal order is based on an erroneous application of the law, as in *Girosky–Garibay."* *Id.* at 844. The court held that the defendant's claim, based on *St. Cyr,* supported a finding that his removal proceeding was fundamentally unfair and resulted in a denial of justice. *Id.* at 845. Prior to the release of *Lopez–Ortiz,* this Court was inclined to follow the reasoning in *Girosky–Garibay* and *Ojeda–Escobar* and rule that the IJ and the BIA's refusal to consider 212(c) relief in the instant cause was an erroneous application of the law that rendered Defendant's removal proceeding fundamentally unfair. However, without specifically addressing *Girosky–Garibay* or *Ojeda–Escobar,* the Fifth Circuit has now ruled that the improper retroactive application of the IIRIRA amendments repealing 212(c) relief is not a procedural defect that gives rise to a violation of due process. The Fifth Circuit clearly acknowledged that the IJ's understanding of 212(c) relief in *Lopez–Ortiz* was an erroneous interpretation of the law, but made no suggestion that such an erroneous interpretation, in and of itself, constitutes fundamental unfairness. Because the Court is bound by Fifth Circuit precedent on this issue, it cannot hold otherwise. Therefore, without a showing that the IJ or the BIA committed any procedural errors in the instant cause that violated his due process rights, Defendant cannot prevail.

Because Defendant has failed to prove that his removal hearing was fundamentally unfair, the Court need not reach the remaining elements of the *Mendoza–Lopez* test and 8 U.S.C. § 1326(d). *Encarnacion–Galvez,* 964 F.2d at 406. Accordingly, the Court is of the opinion that Defendant's Motion to Dismiss the Indictment should be denied.

**IT IS HEREBY ORDERED** that Defendant Bernardino Sotelo–Mendoza's "Motion to Dismiss the Indictment" is **DENIED.**